No. 74,124

STATE OF KANSAS, *Appellee*, v. EZRA HILLS, *Appellant.*
(957 P.2d 496)

Opinion filed April 17, 1998.

*Rebecca E. Woodman*, assistant appellate defender, argued the cause, and *Thomas W. Bartee*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Ezra Hills appealed his convictions of possession of cocaine, K.S.A. 65-4107(b)(5), possession of drug paraphernalia, K.S.A. 65-4152, and transporting an open container,

K.S.A 41-804. The Court of Appeals reversed the convictions, finding the trial court improperly excluded from evidence exculpatory portions of Hills' videotaped statement to police, violated his Sixth Amendment right of confrontation, Fifth Amendment due process right, and right of confrontation under § 10 of the Kansas Constitution Bill of Rights. *State v. Hills*, 24 Kan. App. 2d 1, 941 P.2d 404 (1997). The State's petition for review was granted.

The State claims (1) the exclusion of the exculpatory portions of defendant's videotaped statement as hearsay was proper; (2) defendant acquiesced in the judgment by agreeing to withdraw his motion for new trial and motion for acquittal in return for the State's recommendation of probation; and (3) the trial court did not err in restricting defendant's cross-examination of a witness regarding her drug usage and revocation of probation.

During the early morning hours of January 11, 1992, Officer Stuart Peck and another officer of the Overland Park police were dispatched to check out a suspicious person. When the officers arrived, they noticed a car with a burned-out headlight and a passenger matching the description of the suspicious person. The vehicle was stopped, and the driver of the car was arrested for driving with a burned-out headlight. One police officer observed an open bottle of wine and an open can of beer in plain view. Hills, a passenger, was arrested for transporting an open container. The car was searched. In a passenger door map sleeve, the police found a prescription pill bottle bearing the name Jay Backstron containing three rocks of crack cocaine. A search of Hills produced four small plastic bags containing white powder residue and a razor blade with white residue in Hills' jacket pockets. Hills was transported to the police station and was again searched. A glass tube with white powder residue was found in Hills' sock. The residue was tested and determined to be cocaine.

The driver, Ruth Reid, was taken to the police station and searched. A crack pipe was found. Reid stated she and Hills were going to her apartment to smoke Hills' cocaine. Reid stated Hills had at least one rock of cocaine.

Hills claimed that he was not aware the baggies, crack pipe, and glass tube contained cocaine. Hills was convicted of possession of

cocaine, possession of drug paraphernalia (glass pipe and/or razor blade), and transporting an open container. He was sentenced to 4 to 12 years on the cocaine charge and 1 year on the paraphernalia charge, and fined $50 for an open container.

Hills appealed, raising various issues. The Court of Appeals reversed Hills' conviction of possession of cocaine, holding the trial court erred (1) in excluding exculpatory portions of the defendant's videotaped statement as hearsay and in admitting inculpatory portions of the tape under the "statement against interest" exception to the hearsay rule; (2) in limiting cross-examination of Reid concerning her use of drugs and violation of probation; (3) in finding Hills acquiesced in the judgment by agreeing to withdraw his posttrial motions in exchange for the State's agreement not to oppose probation; (4) in limiting the cross-examination of Reid concerning a prior conviction; (5) in admitting evidence of Hills' prior drug use under K.S.A. 60-455; (6) in failing to give an accomplice instruction; and (7) in denying Hills' motion to suppress evidence seized from the vehicle in which Hills was riding under the "plain view" exception.

The State petitioned for review, claiming that (1) Hills acquiesced in the judgment; (2) exclusion of Hills' hearsay exculpatory statements was proper; and (3) limitation of Hills' cross-examination of Reid concerning her prior drug use and violation of probation was proper and that even if the trial court erred, the error was harmless since Hills possessed the contraband when arrested.

## ACQUIESCENCE

After his conviction, Hills filed motions for new trial, acquittal, and probation. At the hearing on the motion for new trial, defense counsel informed the court Hills was withdrawing his motions for new trial and judgment of acquittal in exchange for the State's agreement not to oppose probation at Hills' 120-day call back. The court sentenced Hills and placed him on 3 years' probation.

The State argued to the Court of Appeals that Hills was barred from raising five issues in his motion for new trial on appeal. The State asserts that by agreeing to withdraw his motions for new trial and acquittal, Hills acquiesced in the judgment. Quoting *Younger*

*v. Mitchell*, 245 Kan. 204, Syl. ¶ 1, 777 P.2d 789 (1989), the Court of Appeals observed that "[t]he gist of acquiescence sufficient to cut off a right to appeal is voluntary compliance with the judgment. . . . [I]t must be shown that the appellant has either assumed burdens or accepted benefits of the judgment contested in the appeal." 24 Kan. App. 2d at 3. The court emphasized that the doctrine of acquiescence has limited application in criminal cases and, citing *Merando v. A.T. & S.F. Rly. Co.*, 232 Kan. 404, 413, 656 P.2d 154 (1985), also noted that a motion for new trial is not required to preserve issues for appeal. 24 Kan. App. 2d at 3.

In holding that defendant did not acquiesce in the judgment, the Court of Appeals cited *State v. Dubish*, 236 Kan. 848, 850-51, 696 P.2d 969 (1985), in which this court stated:

"Prior to 1966 when an individual, following a conviction and sentence in the district court, voluntarily made application for probation, he acquiesced in the judgment, recognizing its validity. That recognition of a valid judgment precluded his right to appeal. *State v. Mooneyham*, 192 Kan. 620, 390 P.2d 215 (1964). Subsequently, the *"Mooneyham* Rule" was reversed by *State v. McCarther*, 197 Kan. 279, 416 P.2d 290 (1966). This court recognized that when a defendant in a criminal action made application for probation, he was not acquiescing in the judgment of the conviction and he maintained the right to appeal. The court's position was later codified by the legislature. Our statutes now offer an individual convicted of a crime both the right to an appeal of the conviction and the possibility of release from imprisonment. K.S.A. 1984 Supp. 21-4603 provides in part that the application for or acceptance of probation or a suspended sentence does not constitute an acquiescence in the judgment for the purpose of appeal. The right of appeal continues without regard to whether the convicted person has applied for a probation or a suspended sentence." 236 Kan. at 850-51.

The Court of Appeals was correct in finding that the application for, or acceptance of, probation or a suspended sentence does not constitute an acquiescence in the judgment for the purpose of appeal.

## EXCULPATORY STATEMENT

The Court of Appeals' primary reason for reversing Hills' conviction was that the trial court excluded *exculpatory* portions of a videotaped statement made during the post-custodial police interrogation of the defendant while admitting *inculpatory* portions of

the statement. The facts are: After Hills was transported to the police station, a video camera located in the booking area recorded the book-in procedure. The videotape shows the pat-down search of Hills during which a glass tube or crack pipe is located in Hills' sock. In the first few minutes of the tape, defendant made incriminating statements. He admitted that the residue in the baggies found during the search of the vehicle was probably cocaine, which he had smoked in the glass tube. He also stated that he had snorted cocaine 2 days earlier. (Hills had made the same statements to the officer while en route to the police station.) After some additional conversation, Hills told the officer "just leave it alone." Hills then denied the prescription bottle containing the rocks of cocaine was his and stated he obtained the baggies with cocaine residue from someone else.

Prior to trial, the defense filed a motion to suppress the videotaped statements. Hills' inculpatory statements were in the first portion of the tape, and his "exculpatory" statements were made after Hills told the officer to "leave it alone." At the hearing on the motion to suppress, the parties agreed that Hills had invoked his right to remain silent when stating, "[L]et's leave it alone, man, just leave it alone," and that all statements after the invocation of the right to remain silent were inadmissible, except as rebuttal evidence if the defendant testified.

During trial, the State informed the court of its intent to introduce Hills' inculpatory statements made during the taped interview by calling the interrogating officer as a witness. Defense counsel stated that if the officer testified, he would cross-examine the officer as to the excluded exculpatory statements. The State filed a motion in limine to preclude introduction through cross-examination of defendant's exculpatory statements "unless and until the defendant takes the stand." The judge indicated that if the officer's testimony was limited on direct examination to the inculpatory statements, cross-examination as to the exculpatory statements would be beyond the scope of direct examination and inadmissible.

During direct examination of the officer, the State's motion to admit the first part of the videotape was granted, and defense counsel waived any objection to admission of the second segment of the

tape. After the State showed the first part of the tape to the jury, during the State's direct examination, the interrogating officer was asked, "[D]id you have occasion to speak with Mr. Hills on the scene or I guess en route to the police station?" At a bench conference, defense counsel argued that the prosecutor's question opened the door to the excluded portion of the videotape because Hill had discussed the baggies in both segments of the tape. Defense counsel then withdrew his prior objection to admission of Hills' exculpatory statement. The prosecutor limited his questions to Hill's inculpatory statements.

During cross-examination of the officer, the defense requested that the balance of the tape be admitted into evidence. The State's objection that it was inadmissible hearsay and beyond the scope of direct examination was sustained. Later, during cross-examination, defense counsel inquired of the officer:

"Q. . . . . Officer, Mr. Hills never denied that the baggies were in his pocket, did he?

"A. No.

"Q. Specifically, he mentioned he had gotten them from a friend several days earlier?

"A. Yes, that's correct.

"Q. Mr. Hills also never denied that the glass tube was on him, is that correct?

"A. No, he did not deny that, that's correct.

"Q. In fact—you know—when you asked him, what's this used for, he said, 'Well,' and you said, 'Is it for smoking crack cocaine?' And he said 'Yes?'

"A. That's correct."

Later, defense counsel inquired, "Now, Officer, while Mr. Hills admitted to having the baggies in his pocket and he admitted to the crack pipe —" but was interrupted when the State objected. At a bench conference, defense counsel stated he planned to inquire whether the defendant had admitted to possession of the pill bottle. Defense counsel asserted that it was unfair for the judge to allow the prosecution to elicit inculpatory portions of the videotape regarding the baggies and crack pipe through the officer, then prevent the defense from cross-examining the officer as to the defendant's exculpatory statements. The State argued that defendant's exculpatory statements were admissible if the defendant testified, but the defendant could not get his denials into evidence

through the testimony of another person, thereby precluding the State of its right to cross-examine the declarant. The State also argued defense counsel's question was beyond the scope of its direct examination.

The trial court stated to defendant's counsel:

"I cannot permit your client to testify without taking the stand and that in fact what's going on if the Court permits you to question the Officer about his conversation with your client and get his responses or his comments into the record is very self-serving. It does prevent the State and deny the State the right of confrontation to pursue the matters. Until such time as he [the defendant] takes the stand and on his own denies, if that indeed occurs, it is the Court's view these questions are inappropriate and his response to questions by and large from the second part of the tape as to ownership of the cocaine, et cetera, or his particular knowledge are inappropriate unless and until he testifies at which time it becomes relevant."

The Court of Appeals held that the trial court's exclusion of the exculpatory statements required reversal of Hills' convictions for possession of cocaine and possession of drug paraphernalia. 24 Kan. App. 2d at 7. In reaching its conclusion, the Court of Appeals relied upon *State v. Brickhouse*, 20 Kan. App. 2d 495, 503, 890 P.2d 353, *rev. denied* 257 Kan. 1093 (1995). In *Brickhouse*, the defendant was convicted of distribution of marijuana and possession of methamphetamine, both class C felonies, and possession of marijuana, a class A misdemeanor. *Brickhouse* involved an individual named Cardello who became involved in a drug deal with an undercover officer. Cardello told the officer that after he received the money, he would meet his "connection," obtain the drugs, and deliver the order. The police followed Cardello to a restaurant where they observed Cardello and Brickhouse meet, leave together, and stand outside the front door. After a short period of time, Cardello returned to his automobile and sat in the driver's seat. Brickhouse walked to his parked car, retrieved a backpack, walked to Cardello's vehicle, and got in the car. The police moved in, ordered Cardello and Brickhouse out of the automobile, and placed them under arrest.

A search of Cardello's vehicle produced an open backpack lying between the console and the passenger seat. The backpack con-

tained the $475 which the undercover officer had given Cardello. A quarter-pound bag of marijuana was found on the car floorboard near where Brickhouse had been seated, and a small quantity of marijuana was found in a plastic bag between the driver's seat and the console.

Brickhouse was searched. The officers found a small quantity of marijuana in a black fanny pack and a ziplock baggy containing methamphetamine. After searching Brickhouse's automobile, the police seized a white plastic tube, a hand scale with a weight conversion chart, a mobile phone and belt pager, a plastic bag containing marijuana, a first aid kit containing a hypodermic needle, a tablespoon with methamphetamine residue, and a plastic bag containing methamphetamine.

After his arrest, during the course of several conversations with police officers, Cardello gave conflicting statements of Brickhouse's involvement in the drug sale to the undercover agent: one statement implicated the defendant in the drug transaction, the other was exculpatory. When Cardello refused to testify at Brickhouse's trial, Cardello's inculpatory hearsay statements were offered for admission into evidence at Brickhouse's trial during the State's case in chief. Over Brickhouse's objection, the court admitted Cardello's hearsay statements that implicated Brickhouse under the conspiracy exception to the hearsay rule. K.S.A. 60-460(i)(2). When the defense sought to elicit Cardello's exculpatory statements during cross-examination, the judge refused to admit Cardello's statements that exonerated Brickhouse because they were unreliable hearsay. On appeal, Brickhouse challenged the trial court's exclusion of certain hearsay statements of Cardello.

In determining that the trial court erred in admitting only the inculpatory hearsay statements, the *Brickhouse* court stated:

"[A]dmitting hearsay evidence from an absent witness that is incriminating while denying admission of hearsay evidence from that same witness which is exculpatory is so unfair as to amount to a denial of due process.

. . . .

"Our decision on this issue is prompted by the uneven application of the hearsay rule in this case. " 20 Kan. App. 2d at 500-01.

For authority, the *Brickhouse* court relied upon *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973),

which held: "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." 410 U.S. at 302.

The *Brickhouse* court, after discussing *Chambers*, stated:

"[H]ere, the hearsay rule was applied to deprive defendant of evidence vital to his theory of defense, while at the same time that rule was manipulated to admit into evidence a hearsay statement of the same declarant incriminating defendant. We suggest that such an application of the hearsay rule is unfair and deprived defendant of the right to present his theory of defense to the jury. Whatever name one may wish to use, the admission of an incriminating hearsay statement, coupled with the refusal to admit an exculpatory hearsay statement by the same declarant, is so fundamentally unfair as to be an abuse of discretion and a denial of due process under the facts presented.

"We hold that if an incriminating hearsay statement is admitted in an effort to convict a defendant, an exculpatory hearsay statement by the same declarant which tends to exonerate that defendant or which supports the theory of defense may not be denied admission into evidence on the grounds that it is unreliable. Application of the hearsay rule in this manner offends our sense of justice and fair play and affects the jury process in an unacceptable manner. The question of whether the exculpatory statement is reliable is overridden by the inherent unfairness that will occur if that statement is excluded while a similar hearsay statement that is incriminating is admitted." 20 Kan. App. 2d at 503.

The *Brickhouse* court found that the error required reversal of Brickhouse's conviction because the testimony was exculpatory, not available through the other witnesses, and contrary to an admitted incriminating statement by the same witness. 20 Kan. App. 2d at 502.

The Court of Appeals in the present case also relied upon an extension of the rationale of *State v. Reed*, 213 Kan. 557, 561, 516 P.2d 913 (1973), where the *Reed* court stated: "When a witness testifies to some part of an oral conversation with the defendant, the defendant may introduce evidence showing his version of the conversation."

Kansas courts have also disallowed the mechanical application of evidentiary rules where the failure to do so would result in the State not receiving a fair trial. In *State v. Johnson*, 258 Kan. 475, 905 P.2d 94 (1995), the defendant solicited testimony about a conversation with a declarant who did not testify. When the State,

during cross-examination, sought to flush out the details of the conversation, the defendant objected, claiming the statements were inadmissible hearsay.

The trial court noted that normally telephone calls, statements to police, or notes would be inadmissible hearsay. It observed that the purpose of the defense line of questioning was to shift the focus from Johnson to another as the accomplice to the murder. The trial court found that because the defense had implied that another was involved in the crime, it would make an exception to the hearsay rule prohibiting admission of the phone conversation statement and the note. Failing to allow the State to rebut the innuendo advanced by the defendant would prejudice the State at trial. The trial court admitted the statements because defense counsel had opened the door for admission of otherwise inadmissible evidence during his cross-examination.

The *Johnson* court affirmed the trial court, stating that when a defendant opens an otherwise inadmissible area of evidence during the examination of witnesses, the prosecution may then present evidence in that formerly forbidden sphere and that by opening the door to otherwise inadmissible hearsay, a defendant waives the Sixth Amendment right to confrontation. 258 Kan. at 481.

To support its argument that the Court of Appeals erred in its analysis, the State cites *Williamson v. U.S.*, 512 U.S. 594, 129 L. Ed. 2d 476, 114 S. Ct. 2431 (1994). In *Williamson*, the police stopped a car driven by Harris which was weaving on the highway. Harris' consent to a search of the car produced 19 kilograms of cocaine in the trunk. After his arrest, Harris was interviewed twice. During those interviews, Harris confessed to receiving and transporting the drugs, but also minimized his involvement and implicated Williamson as the owner of the drugs. At Williamson's trial, Harris refused to testify. The federal district court ruled that, under the Federal Rule of Evidence 804(b)(3) hearsay exception for statements against penal interest, the drug enforcement agent who interviewed Harris could recount Harris' statement implicating Williamson. The Court of Appeals for the Eleventh Circuit affirmed without opinion. *U.S. v. Williamson*, 981 F.2d 1262 (11th Cir. 1992).

On appeal, the United States Supreme Court vacated the conviction and remanded the case to the district court. The Court concluded that the exception to the hearsay rule for statements against penal interest does not allow the admission of statements that are not self-inculpatory (in this case Harris' statements placing blame on Williamson), even if they are made within a broader narrative that is generally self-inculpatory. The Court noted:

"The hearsay rule, Fed. Rule Evid. 802, is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court." 512 U.S. at 598.

The Court concluded:

"The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" 512 U.S. at 603-04.

In *Williamson,* the United States Supreme Court was interpreting the federal hearsay rule. That interpretation is not binding on a state's interpretation of state evidentiary rules. In addition, *Williamson* dealt with exculpatory statements of a nontestifying witness—not a nontestifying defendant; therefore, it provides no guidance here.

Following the rationale of *Brickhouse* and *Johnson,* after the State had introduced evidence of the videotaped statement in its direct examination of the arresting officer, Hills' defense counsel should have been allowed to cross-examine the officer regarding the witnesses' statements that directly contradicted the officer's testimony without calling the defendant to the stand, even if the defendant's statement was hearsay.

We profess to be a nation governed by a Constitution and laws. The aim of the criminal law is twofold—the guilty person is entitled to a fair trial or the innocent suffer. Nowhere is our commitment

to this principle more profound than in the United States Constitution. The Fifth Amendment prohibits placing a person in jeopardy by compelling him or her to be a witness against himself or herself. The Sixth Amendment lists several rights applicable to criminal prosecutions such as the right to counsel, the right to a speedy and fair trial, and the right to confront opposing witnesses. Where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of justice.

It is simply not permissible to admit an incriminating hearsay statement by the defendant while denying the admission of exculpatory portions of the same hearsay statement through the use of the hearsay rule. Where the State has introduced portions of the defendant's statement which are incriminating, the defendant is allowed to introduce exculpatory portions of his or her statement, even though the defendant does not intend to testify and such evidence is barred by the hearsay rule.

## RESTRICTION OF CROSS-EXAMINATION

Ruth Reid, the driver of the automobile and a witness for the State, testified that Hills had provided the cocaine that night, the cocaine found in her vehicle belonged to Hills, and the only thing that she had was the crack pipe. Reid admitted that she had been charged with and had pled guilty to attempted possession of cocaine and that she had received probation. During cross-examination, Reid was asked, "And you understand that the only way—well, you understand that were your probation to be revoked . . . ." The State objected, and the trial court ultimately allowed the defense to ask Reid, "[Y]ou understand that the way your probation would get revoked if it's going to get revoked is for the State to move to revoke your probation, is that correct?" There was no further inquiry regarding Reid's probationary status.

Subsequently, the defense offered Reid's court file, which showed that two separate motions to revoke Reid's probation had been filed by the State. The motions to revoke were based upon two monthly urinalysis tests that were positive for cocaine. One positive test had occurred a few days after Reid was placed on

probation. Reid's probation had been revoked, then reinstated. The trial court ruled that the fact Reid was on probation and aware that the State could revoke her probation was not sufficient for the defense to introduce additional evidence of that fact.

The Court of Appeals found the trial court's limiting of cross-examination of Reid unduly restrictive, stating:

"The evidence in question would have aided defendant in his efforts to show that the drugs in the automobile were not his. In addition, the failure of the State to take steps to [permanently] revoke Reid's probation permits an inference to be made that her testimony might have been motivated by a desire to stay on probation." 24 Kan. App. 2d at 8.

This reasoning is sound.

In *State v. Bowen*, 254 Kan. 618, Syl. ¶ 6, 867 P.2d 1024 (1994), the court thoroughly discussed cross-examination of a witness concerning the witness' status on probation. There, an eyewitness identified the defendant as having committed the crime. The court would not allow the defendant to cross-examine the witness concerning her status on probation for an unrelated possession of cocaine charge. The State pointed out that the witness was not a suspect in the crime and therefore was not subject to having probation revoked. The *Bowen* court held that the defendant should have been permitted to cross-examine the witness concerning her status on probation. However, the *Bowen* court held that the error in excluding Bowen's proposed cross-examination of the witness was harmless, noting that the witness' testimony was corroborated by several other witnesses and that the witness was asked whether she was given anything in exchange for her testimony. 254 Kan. at 630.

The *Bowen* holding was premised on *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). In *Davis*, the defendant was precluded by a protective order from cross-examining a witness' juvenile adjudication. The defendant asserted that the witness may have identified the defendant out of fear or concern of possibly jeopardizing his probation and to shift suspicion away from himself as the perpetrator of the crime. The United States Supreme Court stated: "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the wit-

ness and affecting the weight of his testimony,' " and set aside the defendant's conviction and granted a new trial. 415 U.S. at 316.

Subsequently, in *Delaware v. Van Arsdall*, 475 U.S. 673, 682-83, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986), the United States Supreme Court stressed that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." 475 U.S. at 681. The Court held that the harmless error analysis applies to the improper denial of a defendant's opportunity to impeach a witness for bias. 475 U.S. at 684. The Court pointed out a variety of factors to be considered in the harmless error analysis, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [Citations omitted.]" 475 U.S. at 684.

In the prosecution of defendant, who was the passenger in a vehicle, for possession of drugs, the trial court erred in restricting defendant's cross-examination of the vehicle's driver concerning her drug use and violation of probation. Defendant's theory was that the drugs belonged to the driver. Defendant was not allowed to show that the driver had violated her probation by continuing to use drugs and that her probation had not been revoked. The State's failure to take steps to revoke the driver's probation permitted an inference that her testimony might have been motivated by a desire to stay on probation. The partiality of a witness is subject to exploration at trial and is always relevant as discrediting the witness and affecting the weight of the witness' testimony.

The errors by the trial court in excluding the exculpatory portion of the statement and in not permitting exploration of bias were not harmless and require reversal. The judgment of the Court of Appeals reversing the district court is affirmed.