No. 100,839

STATE OF KANSAS, *Appellee*, v. LAFAYETTE DAMON ESTER COSBY, *Appellant*.

(262 P.3d 285)

Opinion filed September 9, 2011.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*James R. McCabria*, assistant district attorney, argued the cause, and *Nicole Romine*, assistant district attorney, *Charles E. Branson*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This is Lafayette Damon Ester Cosby's direct appeal of his of first-degree premeditated murder conviction after a second trial. He raises four issues: (1) Whether evidence of a question Cosby asked police was properly excluded as hearsay; (2) whether a lesser included offense instruction on voluntary manslaughter should have been given; (3) whether evidence of premeditation was sufficient to support Cosby's conviction; and (4) whether the prosecutor engaged in reversible misconduct.

## FACTUAL AND PROCEDURAL BACKGROUND

Cosby, Bouba Sembene, and Mamadou Drame went to Kansas City, Missouri, to take part in a Senegal Independence Day celebration event. Cosby made arrangements for Aldrick Johnson to meet the men back at their Lawrence, Kansas, apartment for a get-together later that night. Cosby also invited his downstairs neighbor, Vanessa Engelbert, and her friends, Andrea "Star" Garrison and Chad Davis. Davis told Robert Martin about the party and asked Martin to attend.

When Cosby and Sembene returned about midnight, Johnson was at their apartment with his girlfriend, Brianna Moten. Drame arrived about 30 minutes later. Garrison arrived at about 2 a.m. After receiving a call from Davis, Garrison left the apartment and met Davis and Martin in the parking lot.

Martin, Davis, and Garrison eventually went to the apartment. On the way, Davis asked Martin if he was okay going to the party. Martin responded that he was and asked why Davis inquired. Davis

responded, "Because people might be there that you might not get along with," meaning Cosby in particular.

When Garrison, Davis, and Martin entered the apartment, Cosby greeted them by shaking their hands. Engelbert arrived at the apartment sometime after 2:30 a.m.

When Martin entered the apartment, Johnson felt that the mood of the party changed from happy to dark.

At some point soon after Martin arrived, he and Cosby went into a back bedroom to have a conversation. After 5 or 10 minutes had passed, Davis went to check on them and found Martin and Cosby lying on a bed, laughing and talking. Davis returned to the living room, and Martin and Cosby followed shortly thereafter.

Martin sat in a chair opposite a couch where Johnson, Moten, and Engelbert were sitting. After about 5 minutes, Martin went over to the couch and patted Johnson on the shoulder to get him to make room for him on the couch. Martin then squeezed himself in between Johnson and Engelbert. Martin spoke to Johnson about the last time he had seen him, on the day Martin went to jail for fighting with Johnson's foster sister. Johnson believed Martin blamed him for this incident. Martin brought up problems Johnson had been having with another person, and then Martin began talking about smoking marijuana.

No witness described Martin as threatening or aggressive toward anyone at the party, but Johnson was concerned about Martin's presence. Because he feared that Martin could become violent, and even before Martin sat next to him on the couch, Johnson took a knife out of his pocket and held it by his leg so that no one could see it. Johnson also tried to tell his girlfriend "to get as far away from me as possible" because he was concerned for her safety.

At some point, Martin turned away from Johnson and began talking to Davis and Garrison. During this conversation, Drame saw Cosby leave the living room and return with a handgun. Johnson recalled that Martin said something about marijuana just before he reached into his pocket for something. Moten remembered Johnson and Martin talking about marijuana, Johnson saying "roll it up," and Martin saying "okay" just before Martin reached into his pocket.

At the moment Martin reached into his pocket, Cosby walked up with the handgun and shot Martin three times in the chest while Martin was sitting on the couch. Both Johnson and Moten recalled a pause between the first and second shots. Davis remembered Cosby saying "motherfucker" between the shots.

Immediately after the shots were fired, most of the partygoers ran out of the apartment. Sembene ran to his bedroom in the apartment and stayed there for about an hour. While there, he heard Cosby talking about Jesus.

Johnson was among those who fled the apartment, but he soon returned to remove evidence of drug use and to retrieve his backpack, which contained his own gun. When he returned to the apartment, Cosby was standing in the living room, either talking to himself or praying.

Engelbert, Moten, Garrison, and Davis all went to Engelbert's apartment, two floors below. Garrison and Moten looked out Engelbert's window and saw Cosby walking across the courtyard, away from the apartment building. Davis then had Engelbert take him home, where they met with Johnson. The group then went back to Engelbert's apartment, and Drame met them there. The group returned to Cosby's apartment upstairs to retrieve Garrison's cell phone and Moten's shoes and wallet. While they were there, they began picking up bottles and cleaning the apartment. During this time, no one saw anyone approach Martin's body.

As dawn broke, Drame contacted the police. The police did not recover a gun from Martin's body or from his coat. No witness testified at trial that Martin had a gun at the party on the night of his death. But Johnson and Moten testified about Martin's violent reputation, and Detective Mike McAtee testified about Martin's reputation for being armed.

Two days after the crime, when Cosby had been arrested, he asked Detective John Hanson, "Did you find the gun on him?" During trial, the district judge twice refused to admit Hanson's testimony about this question from Cosby.

First, in anticipation of Hanson's testimony on this subject, the State objected, citing *State v. Stano*, 284 Kan. 126, 159 P.3d 931 (2007). Cosby argued that the testimony should come in because

it had been permitted in his first trial, in which Cosby himself testified. The district judge rejected the argument, ruling that the testimony at the first trial arose in a different context and that *Stano* controlled the situation in the second trial, when Cosby chose not to testify.

The issue arose a second time when Cosby sought reconsideration at the conclusion of Hanson's testimony on other matters. Cosby argued that the question he posed to Hanson was not hearsay because it was offered to prove Cosby's state of mind. He also argued that the statement was not offered to prove that there was a gun at the scene of Martin's killing, only to demonstrate that the police knew of Cosby's question and did not follow up by attempting to locate a gun or by eliciting further information about a gun from other witnesses. The State argued that Cosby wanted the testimony admitted to prove that Cosby shot Martin in defense of Johnson; and it renewed its *Stano* argument, because Cosby elected not to testify, making him unavailable for cross-examination. Cosby responded that there was other evidence supporting his theory that he shot Martin in defense of Johnson, *e.g.*, Johnson's discomfort with Martin, Martin's reach into his pocket, and Martin's reputation for violence. The district judge again ruled that Hanson's testimony on Cosby's question must be excluded under *Stano*.

At the instructions conference, the district judge announced that he would not give an instruction on the type of voluntary manslaughter known as imperfect defense of another, because there was no evidence to support it. Cosby objected to the omission. The State agreed with the judge, arguing that the jury had heard no evidence suggesting Martin did anything threatening or possessed a gun and that Cosby had presented no evidence on his subjective belief at the time of the crime. Cosby responded that the jury could infer his subjective belief from Johnson's testimony that he had armed himself out of fear of Martin and from several witnesses' testimony that Martin was reaching into his pocket when Cosby shot him. The district judge was unmoved, and no voluntary manslaughter instruction was given.

The district judge instructed Cosby's jury on the definition of premeditation in accordance with PIK Crim. 3d 56.04(b):

"Premeditation means to have thought the matter over beforehand; in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional taking—intentional act of taking another's life."

During closing argument, the prosecutor said:

"The physical evidence is consistent with the eyewitness testimony. What did people do in that moment? What do they remember doing four years later? They told you that. You heard that. You will have to decide what you believe is accurate and how truthful it is. It is your province.

"But ask yourself this: Have you heard any evidence that suggests that Lafayette Cosby did not walk up to Robert Martin with some purpose in mind and execute that purpose? People left. They were scared. They went here (indicating) and they went there, and not sure how long it took to get from here to there (indicating).

"Details of that nature, four years later, is it surprising to you—well, in your experience, if they are asked about what happened the day afterwards, it's one thing; and then as time goes by, that their perception itself changes? Does that lead you to believe they are not being credible about the events that stand out without any doubt in their memory, or maybe you found there was some doubt. Those are your decisions."

Cosby's counsel did not object to this argument.

## DISCUSSION

### Admissibility of Detective's Testimony About Cosby's Question

Cosby argues that the district court erred by excluding Hanson's testimony about Cosby's question: " 'Did you find the gun on him?' " On appeal, Cosby muses about whether a question can ever qualify as an out-of-court "statement," and he persists in his arguments that he offered the testimony not to prove the truth of the matter asserted, but to show the ineffectiveness of the police investigation and his state of mind.

The standard of review for admissibility of hearsay evidence is as follows:

"The standard this court applies in reviewing a district court's decision involving the admission or exclusion of evidence is guided by the level of discretion that the district court could exercise in making that decision under Kansas law. For example, [State v.] Gunby [,282 Kan. 38, 144 P.3d 647 (2006),] explained that

when the 'legal basis' of the district court's decision is raised on appeal, appellate courts review such questions de novo. 282 Kan. at 47-48. If the decision at issue is one where the district court is afforded greater discretion, such as the balancing of a piece of evidence's probative value versus the risk of undue prejudice under K.S.A. 60-445, then the district court's decision will not be overturned on appeal if reasonable minds could disagree as to the court's decision. See *State v. Miller*, 284 Kan. 682, 722-24, 163 P.3d 267 (2007) (Luckert, J., concurring)." *State v. Boggs*, 287 Kan. 298, 307, 197 P.3d 441 (2008).

In this case, Cosby challenges the legal bases for the district judge's exclusion of evidence, and we therefore review Cosby's arguments under a de novo standard.

K.S.A. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Out-of-court statements not offered to prove the truth of the matter stated are not hearsay. See *State v. Becker*, 290 Kan. 842, 846, 235 P.3d 424 (2010) (citing *State v. Boldridge*, 289 Kan. 618, Syl. ¶ 12, 215 P.3d 585 [2009]). "The theory behind the hearsay rule is that when a statement is offered as evidence of the truth of the matter stated, the credibility of the declarant is the basis for its reliability and the declarant must therefore be subject to cross-examination." *Becker*, 290 Kan. at 846. If a statement is offered merely to demonstrate that it was made, it is not hearsay. *State v. Harris*, 259 Kan. 689, 698, 915 P.2d 758 (1996). "If relevant, such a statement is admissible through the person who heard it." *Harris*, 259 at 698 (citing *State v. Getz*, 250 Kan. 560, Syl. ¶ 2, 830 P.2d 5 [1992]).

Cosby first asks philosophically whether a question such as his to Hanson can ever qualify as an out-of-court statement. There are certainly questions that impart little or no information about the questioner—"What color was the couch?" for example—but Cosby's was not one of them. Indeed, the question was loaded with significance for a defendant who fired three shots into his victim's chest in front of a roomful of eyewitnesses. It implied that Martin had a gun or that Cosby believed he did, at least when Cosby asked the question 2 days after the crime. See *United States v. Summers*, 414 F.3d 1287, 1298-1303 (10th Cir. 2005) ("How did you guys find us so fast?" implied guilt, wonderment at ability of police to

apprehend perpetrators of crime so quickly). The interrogatory form of Cosby's out-of-court statement does not protect it from hearsay challenge.

Cosby's second argument is that his question was nonhearsay because it was not offered to prove the truth of the matter asserted but to demonstrate the inadequacy of the police investigation. This argument lacks merit. In order for jurors to infer that the police investigation was sloppy or incomplete because it failed to discover a gun, they would first have to have accepted the truth of one of the matters asserted by Cosby's question—that there was a gun to be found. To the extent Cosby's question was supposed to prove the inadequacy of the police investigation, it was classic hearsay.

Cosby's third argument that the question was offered to show his state of mind is somewhat more challenging to unravel.

Ordinarily a statement offered merely to show the declarant's state of mind is admissible. This is true either because it is not offered to show the truth of the matter asserted and therefore does not qualify as hearsay in the first place, see *Boldridge*, 289 Kan. at 634; or, even if it qualifies as hearsay, it fits under a statutory exception for statements describing the then-existing state of mind of the declarant, see K.S.A. 60-460(l).

Here, one of the matters asserted—that Cosby subjectively believed Martin had a gun at the party, making Martin a lethal threat who needed killing before Johnson was harmed—*is* Cosby's state of mind at the time of the crime, not merely circumstantial evidence of what Cosby's state of mind may have been. The State was correct at trial when it argued that Cosby clearly wanted his question to Hanson before the jury as direct evidence of Cosby's subjective belief in Martin's dangerousness. In short, as with the police-investigation rationale for admission, the state-of-mind rationale for admission would have been frustrated unless the jury accepted the truth of the matter asserted. Again, this means Cosby's out-of-court question qualified as classic hearsay.

Once an out-of-court statement is identified as hearsay, it is inadmissible unless a constitutional concern or a statutory exception dictates otherwise.

*Stano*, the case relied upon by the district judge, speaks to the constitutional concern. In that case, a nontestifying defendant argued that the district judge improperly excluded the defendant's out-of-court exculpatory statements to a detective while permitting three witnesses to testify about inculpatory out-of-court statements the defendant had made to them in other conversations.

We began our discussion by observing that "time-honored rules of evidence" required exclusion of the defendant's statements to the detective. *Stano*, 284 Kan. at 132. We continued:

"A criminal defendant is present at trial and has an absolute right to testify in his or her own behalf. Therefore, the defendant in this case could have taken the stand and testified about what he told [the detective]. However, the defendant elected not to testify. In spite of this decision, the defendant now claims that the court erred by excluding *the detective's testimony* regarding the defendant's exculpatory hearsay statement.

"The inculpatory statements admitted by the trial court that form the basis of the defendant's claim—statements that he made to his acquaintances that he committed the murder—were clearly admissible as party admissions under traditional rules of evidence. See K.S.A. 2006 Supp. 60-460(g). The defendant was present and could have taken the stand to deny he made such statements or to attempt to show that the statements were not true for whatever reason. However, the defendant elected not to testify. The question must be asked: 'What, according to the law, makes this situation constitutionally unfair?' " *Stano*, 284 Kan. at 132.

Because the district judge in *Stano* had admitted competing inculpatory hearsay, we were forced to look carefully for any constitutional compulsion that would trump the usual hearsay exclusion rule. See *Stano*, 284 Kan. at 131 (quoting *State v. DuMars*, 33 Kan. App. 2d 735, 739, 108 P.3d 448, *rev. denied* 280 Kan. 986 [2005] [in some instances, admission of inculpatory hearsay statement, coupled with refusal to admit exculpatory hearsay from same declarant, so fundamentally unfair as to be abuse of discretion, denial of due process]). We acknowledged language that state hearsay rules " 'may not be applied mechanistically to defeat the ends of justice' " and may be forced to yield when admission of hearsay is critical to the presentation of a defense. *Stano*, 284 Kan. at 134 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 [1973]). And we discussed our prior deci-

sion in *State v. Hills*, 264 Kan. 437, 443-48, 957 P.2d 496 (1998), in which we held that

" '[i]t is simply not permissible to admit an incriminating hearsay statement by the defendant while denying the admission of exculpatory portions of the same hearsay statement through the use of the hearsay rule. Where the State has introduced portions of the defendant's statement which are incriminating, the defendant is allowed to introduce exculpatory portions of his or her statement, even though the defendant does not intend to testify and such evidence is barred by the hearsay rule.' " *Stano*, 284 Kan. at 135 (quoting *Hills*, 264 Kan. at 448).

We noted, however, that we had clarified our *Hills* holding in *State v. Humphery*, 267 Kan. 45, 56, 978 P.2d 264 (1999), saying it did not lead inexorably to the conclusion that a court must admit any exculpatory statement, even if hearsay, so that a defendant may present his or her defense. *Stano*, 284 Kan. at 136.

We ultimately concluded in *Stano* that there was no violation of the defendant's due process rights when the admitted inculpatory statements and the excluded exculpatory statements were made by the defendant in different contexts to different people at different times. *Stano*, 284 Kan. at 137. We stated:

"[T]the State did not attempt to offer any evidence relating to [the detective's] interrogation of the defendant. Rather, defense counsel attempted to elicit the only testimony regarding this interview during the detective's cross-examination. The evidence therefore was not presented to impeach any testimony by the detective relating to the conversation but, instead, was an attempt to offer the exculpatory hearsay statements by the defendant into evidence without allowing the State an opportunity to cross-examine the defendant with regard to those statements." *Stano*, 284 Kan. at 137.

Here, we need not scramble over the constitutional stumbling block at issue in *Stano*. The State did not admit any incriminating out-of-court statements to police by Cosby. There is no reason to temper the general rule of inadmissibility for a nontestifying defendant's out-of-court exculpatory statements.

We also see no applicable statutory exception under K.S.A. 60-460.

K.S.A. 60-460(l) recognizes an exception for "statements of physical or mental condition, including the declarant's existing state of mind and statements of intent, plan, and motive," when such a

mental condition is in issue or is relevant to prove or explain acts or conduct of the declarant. *State v. McKinney*, 272 Kan. 331, 343, 33 P.3d 234 (2001), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006). But Cosby's question to Hanson does not meet the requirements for this exception. Cosby was not making an implicit statement about his *existing* state of mind; he was talking about his state of mind 2 *days before*. His question to Hanson also does not comport with one of the principal rationales for statutory hearsay exceptions in general or this exception in particular, that is, the existence of some indicia of reliability arising from the statute-specified circumstances surrounding the out-of-court statement. See *State v. Bradford*, 272 Kan. 523, 531-32, 34 P.3d 434 (2001) (citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 [1980] [reliability can be inferred where hearsay falls into firmly rooted exception], *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 [2004]); *McKinney*, 272 Kan. at 343-44 (state of mind exception to hearsay firmly rooted hearsay exception). A statement contemporaneously describing a declarant's belief or intention is inherently more trustworthy than a statement made after the fact, when incentives to embellish or fabricate may have arisen.

Cosby's question to Hanson was inadmissible hearsay, and there was no error in excluding it.

*Instruction on Voluntary Manslaughter*

Cosby also challenges the district judge's decision not to instruct the jury on the type of voluntary manslaughter known as imperfect defense of another. K.S.A. 21-3403(b) defines this type of voluntary manslaughter as "the intentional killing of a human being committed upon an unreasonable but honest belief that circumstances existed that justified deadly force under K.S.A. 21-3211 . . . ." K.S.A. 21-3211(a) provides that "a person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such force is necessary to defend . . . a third person against such other's imminent use of unlawful force." K.S.A. 21-3211(b) permits the use of deadly force if the person using the force reasonably believes deadly force

is necessary to prevent imminent death or great bodily harm to a third person. Voluntary manslaughter based on imperfect defense of others is not a defense to criminal liability; it is a lesser degree of homicide. *State v. Moore*, 287 Kan. 121, 131, 194 P.3d 18 (2008) (citing *State v. Carter*, 284 Kan. 312, 326, 160 P.3d 457 [2007]).

A trial judge must

" ' "instruct the jury on a lesser included offense 'where there is some evidence which would reasonably justify a conviction' of the lesser offense. [Citation omitted.] 'If the defendant requests the instructions, the trial court has a duty to instruct the jury regarding all lesser included crimes that are established by the evidence, regardless of whether the evidence is weak or inconclusive.' [Citation omitted.] 'However, the duty to so instruct arises only where there is evidence supporting the lesser crime.' [Citation omitted.] An instruction on a lesser included offense is not required if the jury could not reasonably convict the defendant of the lesser included offense based on the evidence presented. [Citation omitted.]" ' *State v. Boyd*, 281 Kan. 70, 93, 127 P.3d 998 (2006) (quoting *State v. Drennan*, 278 Kan. 704, 712-13, 101 P.3d 1218 [2004])." *State v. White*, 284 Kan. 333, 347, 161 P.3d 208 (2007).

In this case, in order for the district judge to have been obligated to instruct on imperfect defense of another, there had to be evidence before the jury on Cosby's subjective belief about Martin's dangerousness at the time Martin was shot. Evidence of a defendant's subjective belief ordinarily would come from a defendant's own testimony. See, *e.g.*, *State v. Ricks*, 257 Kan. 435, 439, 894 P.2d 191 (1995) (defendant testified to belief victim would shoot him as victim had pulled gun on him before). When a defendant does not testify, evidence about what he or she was thinking at a particular time is necessarily circumstantial.

As discussed above, one of the pieces of circumstantial evidence Cosby sought to use for this purpose was his question to Hanson. Failing that, he argues on appeal that there was other circumstantial evidence necessitating the voluntary manslaughter instruction: Johnson's and Moten's testimony about Martin's reputation for violence; Johnson's testimony about the mood of the party darkening upon Martin's arrival; Johnson's testimony that Martin brought up the previous incident in which Martin went to jail for fighting with

Johnson's foster sister; and Johnson's testimony about taking the knife from his pocket and warning his girlfriend.

Cosby also contends that, when Martin reached into his pocket, Johnson was afraid Martin was going to hurt someone. But the record does not reflect that. Instead, Johnson testified that, when Martin reached for something in his pocket, Johnson did not know what he was reaching for; it could have been something good or something bad. The record also does not demonstrate that whatever uneasiness Johnson was feeling about Martin and his presence at the party was ever communicated verbally or nonverbally to Cosby.

To convict Cosby of the lesser offense of voluntary manslaughter based on imperfect defense of another, "the jury would have had to conclude the circumstances could warrant an honest belief" that Martin was an aggressor threatening imminent use of unlawful force. See *Moore*, 287 Kan. at 131. There is simply no evidence in this case that Cosby could have harbored an honest belief that Martin was an aggressor at the party, much less an aggressor threatening imminent use of unlawful force. Although Martin may have had a reputation for violence and his arrival may have changed the mood of the party, no witness testified that Martin threatened anyone or that he possessed or displayed a weapon. Johnson's testimony, while it proves some apprehension on Johnson's part, proves nothing about Cosby.

On the record before us, we agree with the district judge's decision not to include the voluntary manslaughter instruction in the jury instructions. No reasonable factfinder could have concluded that Cosby committed the lesser crime based on his imperfect defense of another theory.

*Sufficiency of Premeditation Evidence*

Cosby next argues that the evidence of premeditation was insufficient to support his conviction for first-degree premeditated murder.

"When sufficiency of evidence is challenged in a criminal case, our standard of review is whether, after review of all the evidence, examined in the light most favorable to the prosecution, we are

convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Prine*, 287 Kan. 713, 738, 200 P.3d 1 (2009) (citing *State v. Vasquez*, 287 Kan. 40, 59, 194 P.3d 563 [2008]; *State v. Morton*, 283 Kan. 464, 474, 153 P.3d 532 [2007]). "In reviewing the sufficiency of the evidence, this court will not reweigh the evidence. It is the jury's function, not ours, to weigh the evidence and determine the credibility of witnesses." *State v. Doyle*, 272 Kan. 1157, 1162-63, 38 P.3d 650 (2002) (citing *State v. Aikens*, 261 Kan. 346, 391-92, 932 P.2d 408 [1997]). "Unless a person actually communicates his or her reasons for taking another's life, . . . premeditation must be proved by circumstantial evidence." *Doyle*, 272 Kan. at 1162; see *State v. Cravatt*, 267 Kan. 314, 328, 979 P.2d 679 (1999). "The jury has a right to infer premeditation from the established circumstances of the case[,] provided the inference is a reasonable one." *Cravatt*, 267 Kan. at 329 (citing *State v. Rice*, 261 Kan. 567, 587, 932 P.2d 981 [1997]).

This court has discussed various circumstances from which a jury may infer premeditation:

"While premeditation to commit murder may not be inferred from the use of a deadly weapon alone, it may be inferred where other circumstances also exist. Circumstances which may give rise to the inference of premeditation include: (1) the nature of the weapon used; (2) the lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless." *Cravatt*, 267 Kan. 314, Syl. ¶ 4.

See *State v. Scaife*, 286 Kan. 614, 617-18, 186 P.3d 755 (2008).

In this case, the State presented not just sufficient but strong evidence of premeditation. Johnson, Moten, Sembene, Davis, and Garrison testified that Martin did not threaten or act in an aggressive manner toward Johnson or anyone else before the shooting. Drame testified that he saw Cosby go into the back room and come back out with a handgun. Both Johnson and Moten testified that Cosby fired multiple shots at Martin, with a pause between the first and second. Johnson testified that the first shot was fired from slightly farther away than the second shot. Davis testified that he heard Cosby say "motherfucker" between shots. Johnson recalled

seeing Cosby standing and looking at Martin after the shooting. Johnson thought Cosby was praying over Martin's body, and Sembene heard Cosby talking about Jesus. Johnson testified that Cosby said to him: "I hope them girls don't go running their mouth."

Considering all of this evidence in the light most favorable to the State, we hold that the evidence of premeditation in this case was plainly sufficient to support Cosby's conviction.

*Prosecutorial Misconduct*

We analyze allegations of prosecutorial misconduct in two steps.

" 'First, the appellate court must determine whether the comments were outside the wide latitude allowed in discussing the evidence. Second, the appellate court must decide whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial, thereby requiring reversal.' " *State v. Richmond*, 289 Kan. 419, 439, 212 P.3d 165 (quoting *State v. White*, 284 Kan. 333, Syl. ¶ 1, 161 P.3d 208 [2007]).

See *State v. Tosh*, 278 Kan. 83, 85, 91 P.3d 1204 (2004).

"[A] contemporaneous objection to prosecutorial misconduct during closing argument is not required in order to preserve the issue for appeal." *State v. Stone*, 291 Kan. 13, 17, 237 P.3d 1229 (2010) (citing *State v. McReynolds*, 288 Kan. 318, 322-23, 202 P.3d 658 [2009]; *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 [2007]).

Here, Cosby argues that the prosecutor improperly shifted the burden of proof on the element of premeditation to the defense when he said: "But ask yourself this: Have you heard any evidence that suggests that Lafayette Cosby did not walk up to Robert Martin with some purpose in mind and execute that purpose?"

In *Tosh*, this court considered whether a prosecutor improperly shifted the burden to the defendant during closing argument by asking, " ' "[I]s there any evidence that it didn't happen? Is there any evidence that the things she told you didn't happen?" ' " 278 Kan. at 92. This court held that these comments constituted improper attempts to shift the burden of proof to the defense and, when considered in context with the other improper statements by the prosecutor during closing, necessitated reversal. *Tosh*, 278 Kan. at 92-93.

In *McKinney*, the defendant also complained that the prosecutor had shifted the burden of proof by saying that the defense failed to prove a particular witness was lying. We said that the prosecutor's remarks "suggested to the jury that the defense had the responsibility to rebut [the witness'] statements and they failed to do so because [the witness] was telling the truth." *McKinney*, 272 Kan. at 346. But we held that, when the district judge properly instructed the jury on the prosecution's burden of proof, the prosecutor could argue inferences based on the balance or lack of evidence. *McKinney*, 272 Kan. at 346. This was true as long as the prosecutor's remarks did not "indirectly draw an adverse inference regarding the defendant's failure to testify." *McKinney*, 272 Kan. at 346 (citing *United States v. Parker*, 903 F.2d 91, 98 [2d Cir. 1990]; *United States v. Sblendorio*, 830 F.2d 1382, 1391-93 [7th Cir. 1987]; *United States v. Fleishman*, 684 F.2d 1329, 1343 [9th Cir. 1982]). Because the prosecutor was only commenting in general on the defendant's failure to produce evidence to rebut the witness' testimony rather than commenting on the defendant's failure to take the stand, the remarks were permissible. *McKinney*, 272 Kan. at 347.

In Cosby's case, the jury was instructed that the State had "the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." The district judge also told the jury: "If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty."

It is also significant that the prosecutor reinforced the judge's instructions on the burden of proof during the rebuttal portion of the prosecutor's closing argument:

"[I]f you collectively decide there is any doubt about those factors, your obligation is to find Mr. Cosby not guilty. Do you have any doubt about those facts, any reasonable doubt? Keep that in mind . . . . [Y]our obligation, from your oath as a juror, is to apply the facts and ask yourself only if you have doubts as to those elements."

Moreover, the context of the prosecutor's challenged remark is critical. It shows that he was reviewing the evidence of the events

surrounding the shooting. First, he discussed what the witnesses said, pointing out the consistencies between their versions of events. He also pointed out that there were some inconsistencies about small details. He then moved to how the physical evidence corroborated the testimony of the witnesses. It was at this point that he addressed the element of premeditation, reviewing the testimony of those witnesses who said that Martin had not done anything threatening at the party and that Cosby fired three shots, pausing between the first and second. He acknowledged that the events were, by the time of the trial, 4 years old, but he argued that the witnesses' testimony was still consistent with the physical evidence. Only then did the prosecutor ask the jury whether it had heard evidence that Cosby did not walk up to Martin with some purpose in mind and execute that purpose. Immediately after that remark, the prosecutor went on to argue that it was not surprising if witnesses' perceptions changed over 4 years, but that did not mean their recollections of events were not credible.

This context persuades us that the prosecutor's challenged comment was within the wide latitude allowed the State in discussing the evidence. It constituted only a general question about the absence of evidence to rebut the State's witnesses, similar to the comment under scrutiny in *McKinney*, not an impermissible remark about the defendant's failure to testify or an attempt to shift the burden of proof to the defense. We are reassured on this point by the district judge's burden of proof instructions and the prosecutor's proper reference to them in the rebuttal portion of his closing.

Because we hold that the prosecutor's challenged comment was within the wide latitude afforded, there was no misconduct and we need not reach the second, plain-error step of our analysis.

## CONCLUSION

We hold that there was no error on any of the bases argued by defendant Lafayette Cosby on this appeal. The judgment of the district court is affirmed.

\* \* \*

JOHNSON, J., dissenting: I respectfully dissent on the hearsay

issue. I would find that the law enforcement officer should have been permitted to testify that Cosby had asked the officer, "Did you find the gun on him?"

Citing to *State v. Harris*, 259 Kan. 689, 698, 915 P.2d 758 (1996), the majority acknowledges that a statement which is offered merely to demonstrate that it was made is not hearsay and, "[i]f relevant, such a statement is admissible through the person who heard it." *State v. Cosby*, slip op. at 9; see also *Boldridge v. State*, 289 Kan. 618, 635, 215 P.3d 585 (2009) (not hearsay if "attempting 'not to prove the truth of the matter asserted, but merely to show that the statements were said,' as well as 'the defendant's state of mind' "). Recently, in *Boldridge*, we noted that this court has identified at least three types of out-of-court statements that do not constitute hearsay under K.S.A. 60-460, with one type being " 'those statements used circumstantially as giving rise to an indirect inference but not as an assertion to prove the matter asserted.' " 289 Kan. at 634 (quoting *Harris*, 259 Kan. at 699).

In my view, it is obvious that the principal reason that Cosby wanted the "statement" admitted was to show the jury that he had made it. Moreover, the statement was relevant (and thus admissible through the officer that heard it) because it was circumstantial evidence that Cosby believed Martin possessed a gun when Cosby shot him. The jury could draw an indirect inference from the statement that Cosby had a subjective basis for self-defense or defense of another. Moreover, in order for the "statement" to fulfill its inferential purpose, the jury did not have to believe in the truth of any aspect of the words spoken. It mattered not a whit whether the police actually found a gun on Martin or even whether Martin ever possessed a gun. What mattered is that Cosby asked about a gun.

Accordingly, I would find that the district court erred in refusing to admit the law enforcement officer's testimony that Cosby asked him whether police had found a gun on the victim. In *Boldridge*, we found that the exclusion of admissible nonhearsay statements was not harmless error because it had significantly hindered the defendant's ability to present her claim. 289 Kan. at 636. Similarly, the exclusion of Cosby's query to law enforcement significantly

hindered his ability to present a self-defense claim and to obtain the lesser included offense instruction discussed by the majority. Accordingly, I would grant Cosby a new trial.

LUCKERT, J., joins in the foregoing dissent.