No. 58,575

STATE OF KANSAS, *Appellee*, v. DONALD E. HICKS and WALTER COLLINS, JR., *Appellants*.

(729 P.2d 1146)

Opinion filed December 5, 1986.

*William Cather*, of William Cather, P. A., of Wichita, argued the cause, and *Michael J. Studtmann*, of Michael J. Studtmann, P. A., of Wichita, was with him on the briefs for appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause, and *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

MILLER, J.: The defendants, Donald E. Hicks and Walter Collins, Jr., each appeal from a conviction of aggravated burglary, K.S.A. 21-3716, and the sentence imposed following jury trial in Sedgwick County District Court. The habitual criminal act, K.S.A. 1985 Supp. 21-4504, was invoked, and each defendant was sentenced to serve a term of imprisonment of not less than fifteen nor more than sixty years.

Defendants raise a number of issues on this appeal, including the contention of Collins that the evidence was insufficient to

support his conviction. When a defendant in a criminal case contends on appeal that the trial evidence is insufficient to sustain the conviction, the standard of review is:

"Does the evidence, when viewed in the light most favorable to the prosecution, convince the appellate court that any rational factfinder could have found the defendant guilty beyond a reasonable doubt?" *State v. Wise*, 237 Kan. 117, 119, 697 P.2d 1295 (1985).

We turn first to the evidence, which we view in the light most favorable to the prosecution.

Elmer Wilbarger, a man in his seventies, was asleep or almost asleep in his bedroom at 1025 East Murdock, Wichita, Kansas, on October 23, 1984. He heard a noise and went to the kitchen to investigate. He encountered two men who had broken and entered through the kitchen window. The men forced Wilbarger back into the bedroom, where the men beat him with a jack handle and left him semi-conscious. After the intruders left, Wilbarger crawled into the living room. When the other residents of the house returned later that evening, they had to climb in through the broken kitchen window because the door was locked and they could not arouse Wilbarger. They found him lying on the floor and bleeding profusely. They reported the matter to the police, and Wilbarger was taken to the hospital. Two of Wilbarger's wallets containing money were missing, as was a considerable amount of personal property belonging to other residents.

Wilbarger told the men who found him that one of the burglars was Donald Hicks, and that he knew the other only by the name "Gabby." The officer associated that nickname with Walter Collins, Jr. Wilbarger was shown photographic lineups, and he immediately identified Hicks and Collins as the burglars. Similarly, he identified both of them in court during trial. Wilbarger did not give anyone permission to come into his home and take money from him or to hit him on the head.

The elements of aggravated burglary are knowingly and without authority entering into any building in which there is some human being, with intent to commit a felony or theft therein. K.S.A. 21-3716; and see PIK Crim. 2d 59.18. Viewing the evidence in the light most favorable to the State, as we must, we hold that there was sufficient competent and substantial evi-

dence to support the aggravated burglary conviction of both defendants, Donald E. Hicks and Walter Collins, Jr.

The defendants raise three issues relating to the "incompetency" of the victim, Elmer Wilbarger. The factual background of these claims is as follows:

In 1963, Wilbarger was charged in Sedgwick County District Court with one or more felonies. Apparently the charges arose out of "hot checks." Wilbarger was examined by a psychiatrist, who reported to the court that, in his opinion, Wilbarger was "unable to assist in his defense due to the severe impairment in his mental functioning at the present time." The trial judge, Honorable Tom Raum, in a 1963 journal entry, found that Wilbarger was insane and unable to comprehend his position and make his defense. Wilbarger was then sent to the state security hospital at Larned, where he remained until 1976. In 1974, a physician on the hospital staff reported to the trial judge that Wilbarger was still incompetent to stand trial, and, in all likelihood, would not become competent to stand trial in the foreseeable future. In 1976, having served more than the maximum time for the offenses of which he was accused, he was released from custody.

Immediately after the 1984 burglary, Wilbarger told the other occupants of the house, who found him that evening, what had happened. He related a similar story to the investigating officers, and he testified similarly at the preliminary examination. When this case came on for trial, and after the jury had been empaneled and trial commenced, the trial judge held a hearing outside of the presence of the jury, the transcript of which extends for over fifteen pages in the record. No motion was made prior to trial, but at trial, counsel for the defendants asked the court to receive in evidence the file relating to Wilbarger's 1963 criminal charges, which included the determination that Wilbarger was "insane." At the conclusion of the lengthy hearing, the trial court found that Wilbarger was capable of expressing himself so that his testimony could be understood, that his memory appeared to be clear, and that he was capable of understanding the duty of a witness to tell the truth. As that hearing neared its conclusion, and in the absence of the jury, counsel for Collins orally moved the court for a continuance and for leave to have the witness examined by a psychiatrist. The trial court noted the lateness of

that application and the apparent fitness of the witness and his responsiveness to questions, and denied the motion.

After the initial oral argument on the motions for new trial, the trial court, "in order to be totally fair to both defendants," ordered an evaluation of Wilbarger by Dr. Howard Brodsky at the Sedgwick County Mental Health Clinic. At the final hearing on the motions for new trial, Dr. Brodsky was called as a witness, presented his report which was received into evidence, testified at length, and was thoroughly cross-examined. Dr. Brodsky had examined the witness and a transcript of the witness's preliminary hearing testimony, and had read a report of Wilbarger's confinement in the Larned State Hospital. Dr. Brodsky concluded that Wilbarger was mentally competent to testify regarding the occurrences of October 23, 1984, and that he was of sufficient mind and memory during the time trial was held in this case to relate what had happened to him to a court and jury. Brodsky noted that Wilbarger had some limitations—likely the result of aging and chronic alcoholism—and that his thought processes were somewhat slowed down. The doctor concluded, however, that the limitations did not preclude Wilbarger from being an adequate witness. Dr. Brodsky found the witness' memories of the October 23 incident to be reasonably clear and undistorted by any type of mental aberration. The trial judge denied the motion for new trial.

Defendants contend that the trial court erred by not admitting into evidence the old district court file which included the 1963 report of the single psychiatrist and the finding of Judge Raum that Wilbarger was insane and incompetent to stand trial. Counsel repeatedly emphasized to the trial court that Judge Raum made a finding that the defendant was "insane," and that he had never been restored to capacity. The proceeding before Judge Raum was a proceeding to determine the competency of Wilbarger to stand trial, not a proceeding under the probate code (K.S.A. 59-2271 *et seq.* [Corrick]) for commitment of an insane person.

Since 1970, proceedings to determine the competency of an accused to stand trial on criminal charges have been governed by the provisions of K.S.A. 22-3301 *et seq.* A person is said to be incompetent to stand trial when, because of mental illness or defect, he is unable to understand the nature and purpose of the

proceedings against him or is unable to make or assist in making his defense. K.S.A. 22-3301.

In 1963, however, when Wilbarger's competency to stand trial was in issue before Judge Raum, the proceedings were governed by K.S.A. 62-1531 (Corrick). That statute provided in part:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, *to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense,* the court shall forthwith commit him to the state hospital for the dangerous insane for safekeeping and treatment . . . ."

That provision of the statute is identical to the original enactment, L. 1911, ch. 299, § 4, except that the 1911 enactment designated the hospital as the "State Asylum for the Dangerous Insane."

Judge Raum conducted the proceedings under the statute as it existed in 1963. The examining psychiatrist reported that Wilbarger was incompetent to stand trial, and thus Judge Raum, in his order, found that Wilbarger was "insane and unable to comprehend his position and to make his defense," in the wording of the statute. It should be emphasized that this was a determination of incompetency to stand trial, not a determination of insanity under K.S.A. 59-2271 (Corrick).

Should the 1963 court file have been admitted into evidence to impeach the witness credibility in this case? We find no Kansas case squarely deciding this issue. In *State v. Coe,* 223 Kan. 153, 162-63, 574 P.2d 929 (1977), and *State v. Belote,* 213 Kan. 291, 295-96, 516 P.2d 1159 (1973), we held that evidence that a witness is a user of drugs was not admissible for credibility purposes "unless it is proven that the witness was under their influence *at the time of the occurrences as to which he testifies, or at the time of the trial, or that his mind or memory or powers of observation were affected by the habit."* (Emphasis supplied.) Thus, the issue in that case was decided on the basis that to be admissible it must be shown that the drug habit affects (1) the witness' power of observation at the time of the occurrence, (2) his ability to relate those occurrences at time of trial, or (3) his ability to retain information and to recall it. This holding appears to be entirely consistent with the views of Wigmore and McCormick.

In 3A Wigmore on Evidence § 932 (Chadbourn rev. 1970), this guidance is offered:

"The existence of a derangement of the sort termed insanity is admissible to discredit, provided that it affected the witness at the time of the affair testified to (*i.e.*, his power of observation), or while on the stand (*i.e.*, his power of recollection or narration), or in the meantime (so as to cripple his powers of recollection)."

In McCormick on Evidence, § 45 (3d ed. 1984), the author notes:

"Manifestly, however, the fact of mental 'abnormality' either at the time of observing the facts or at the time of testifying will be provable, on cross or by extrinsic evidence, as bearing on credibility, often, as under the federal rules, in the discretion of the court."

This is the same test applied by the trial judge here. He found no evidence to indicate that the witness lacked the power of observation at the time of the burglary, or lacked the power to recall and testify about those events. All of the evidence was to the contrary. The judge refused to take judicial notice of the 1963 court file and receive it in evidence because he found that circumstances had changed and the 1963 determination of incompetency to stand trial was not applicable to the witness 22 years later.

While relevant evidence concerning the issue of the credibility of witnesses is generally admissible, K.S.A. 60-420, the question of relevancy is left to the sound discretion of the trial judge. Here, there was no evidence that the witness was experiencing mental problems at the time of the burglary, between that time and the trial, or at the time of his testimony at trial. Under the circumstances, we hold that the trial judge did not abuse his discretion, under the evidence before him, in refusing to admit the 1963 record into evidence.

Defendants next contend that the trial court erred in concluding—out of the presence of the jury, while ruling on the admissibility of the 1963 court records—that Judge Raum erroneously concluded that Wilbarger was "insane," based upon the report of the examining psychiatrist which merely stated that Wilbarger was incompetent to stand trial. We have pointed out that Judge Raum merely followed the wording of the applicable statute in the journal entry memorializing his order. He made no finding of "insanity" as that term was then defined in the probate code, K.S.A. 59-2001 (Corrick):

"[A]ny person who is so far disordered in his mind as to endanger health, person or property; or any person who is so far disordered in his mind as to render him a proper person for care and treatment in a hospital for insanity or mental disease . . . ."

Judge Hodge's remark was made out of the hearing of the jury and was not prejudicial to these defendants. There was no reversible error.

Defendants also contend that the trial court erred in refusing to order a psychiatric examination of Wilbarger prior to his testimony at trial. The only motion for such an examination was made orally following the noon recess on the first day of trial and immediately before Wilbarger was scheduled to testify. No motion for examination of the witness was made prior to trial, although he had testified at the preliminary examination and had been observed by both defendants and their counsel at that time. No evidence was presented which would suggest that Wilbarger's mental health was impaired at the time he was victimized or at the time of his testimony. In *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), we said in Syllabus ¶ 3:

"A trial judge has discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination."

In *Gregg*, we affirmed the trial court's decision not to order an examination of the witness. There, the motion was made the day before trial, and no facts were stated or evidence introduced establishing a reason for the requested examination. That rationale is applicable here.

In the case before us, the trial court refused to interrupt the trial and secure an examination of the witness, finding no reason in the evidence to do so. After the trial, and before ruling on the motion for new trial, it did order an examination and the results thereof were not helpful to the defendants. We find no abuse of discretion in refusing to grant the motion for examination made during trial. In light of the results of the post-trial examination, the issue is moot.

Finally, defendants argue that the trial court erred in finding Wilbarger "present" for purposes of K.S.A. 1985 Supp. 60-460(a), even though he was not in the courtroom. Section 460(a) excepts from the hearsay rule statements previously made by persons who are "present at the hearing and available for cross-examination" with respect to the statement. After the direct examination

of Mr. Wilbarger was commenced, the trial judge determined that an amplification system was needed to permit effective examination of the witness. Wilbarger's hearing was impaired, and he had difficulty in understanding counsel. The judge then found that the amplification system could not be installed until the next day, so he excused Wilbarger for the rest of that day and instructed him to return on the following morning. When another witness was testifying, defense counsel anticipated that the witness would testify regarding Wilbarger's out-of-court statements, and asked the court to recess the hearing until Wilbarger returned the next day. The court ruled that Wilbarger was "present" at the hearing and available for cross-examination, and denied the motion.

A similar situation arose in *State v. Taylor,* 217 Kan. 706, 712-13, 538 P.2d 1375 (1975). There, the victim was in the library but not in the courtroom when two officers repeated the victim's story of the crime. We held that the officers' testimony came squarely within the exception of Section 460(a), and that the victim "was both physically and mentally present at the trial." In *Taylor,* the victim was in the courthouse at the time the 460(a) testimony was offered and the trial court offered to call her into the courtroom if defense counsel wished her present. We do not think the differences in the factual situation, however, are important. Here, Wilbarger was present physically both before and after the testimony. He was present at the hearing. He was available for full cross-examination. The key factor in the statute is the availability of the witness at the trial for examination and cross-examination as to the out-of-court statements. The witness does not have to be physically present in the courtroom at the time the hearsay testimony is given. We find no error.

The judgment is affirmed.