NOT DESIGNATED FOR PUBLICATION

No. 114,090

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LANCE OLSON,
*Appellant,*

v.

STATE OF KANSAS,
*Appellee.*


MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed September 9, 2016. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*:  Lance W. Olson appeals the district court's denial of his K.S.A. 60-1507 motion after an evidentiary hearing. Olson claims the district court erred when it found that he was not prejudiced by his counsel's ineffective representation at his probation revocation hearing. He also claims the district court erred in allowing hearsay testimony at the evidentiary hearing on the K.S.A. 60-1507 motion. For the reasons stated herein, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2006, Olson pled guilty to multiple drug charges, including conspiracy to manufacture methamphetamine. On March 31, 2006, the district court imposed a controlling presumptive sentence of 251 months' imprisonment but granted a downward dispositional departure to probation with community corrections for 36 months. One of the conditions of Olson's probation was that he have no contact with his estranged wife, Kandee Olson, who was a codefendant in the case.

On April 11, 2006, the State filed a motion to revoke Olson's probation alleging that he had violated the conditions of his probation by failing to report as directed, by testing positive for cocaine on two occasions, by having contact with Kandee in violation of the district court's order, and by failing to provide truthful and accurate information. After a hearing, the district court reinstated Olson's probation for 36 months. The district court emphasized that Olson was not to have any contact with Kandee unless it was for joint therapy sessions.

On July 17, 2006, the State filed another motion to revoke Olson's probation, alleging that he again violated the conditions of his probation by having contact with Kandee. The district court held an evidentiary hearing on the motion on September 21, 2006. Olson was represented at the hearing by counsel, David Holmes.

Crystal Pearson, Olson's intensive supervision officer, testified that she filed the request to revoke Olson's probation because she had been notified by law enforcement that Olson had been to Kandee's house on the night of July 11, 2006, which was the same evening as Olson's treatment session at Mirror, Inc. According to Pearson, Olson never admitted that he had been at Kandee's house, but "he stopped denying it" and began making excuses for why he could be there. Pearson also talked to Scott Wygant who was Olson's counselor at Mirror. Wygant originally had told law enforcement that Olson was

2

at a treatment session during the time he allegedly had been to Kandee's house. However, when Pearson spoke with Wygant, he told Pearson that he had lied to the police because he felt bad that Olson was facing prison time for attempting to see Kandee. Wygant told Pearson that Olson could have left the treatment session and visited Kandee's residence during a break while everyone was outside smoking.

Kandee also testified at the hearing. She testified that on July 11, 2006, she was at home with her daughter, Morgan McGill. Kandee was in the bathroom when McGill told her that Olson was outside the house talking to his grandson through a window. Kandee told Olson to leave and that the police were coming. After that, Olson left the house. Kandee testified that the incident with Olson occurred at "6:00 or 7:00."

Hutchinson Police Officer Paul Sack also testified at the hearing. He responded to Kandee's home at 6:43 p.m. on July 11, 2006. Sack interviewed Kandee, and she told him that she saw Olson on the porch of the residence talking through a door with his grandson. Sack also interviewed McGill who confirmed that Olson was at Kandee's residence that evening. McGill told Sack that Olson walked onto the porch of the residence and then Kandee called the police. Sack went to Mirror and spoke with Olson. Olson told Sack that he had been at Mirror since his group session started at 6 p.m. However, Sack checked the engine compartment of Olson's car and noticed that it was very hot, indicating to Sack that the engine recently had been running.

Olson also testified at the hearing. He denied going to Kandee's residence on July 11, 2006. Olson testified that he was driving to Mirror at 5:40 when he saw McGill at an intersection. Olson's grandson was in the car with McGill and began hollering at Olson. According to Olson, McGill told him that she would make sure he spent the rest of his life in prison, and then she sped off. Olson testified that he arrived at Mirror 5:45 p.m. or 5:50 p.m. and he did not leave Mirror until 8 p.m.

3

After hearing the evidence, the district court addressed Wygant who was in the courtroom but had not testified at the hearing. The judge wanted to know why Wygant had lied to the police, as Pearson had testified. Wygant denied that he lied to the police. Wygant said that when the police arrived at Mirror on the evening of July 11, 2006, he told them that Olson had been at Mirror since about 5:50 p.m. Wygant said that he had signed Olson's attendance card that evening, and he always signed the cards during the first 5 minutes of the session.

At the conclusion of the hearing, the district court found that Olson had committed a clear violation of the conditions of his probation by having contact with Kandee at her residence. The district court revoked Olson's probation and ordered him to serve his underlying sentence. This court affirmed the revocation of Olson's probation on June 20, 2008. See *State v. Olson*, No. 97,698, 2008 WL 2510187, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 287 Kan. 768 (2008).

On January 5, 2010, Olson filed a petition for a writ of habeas corpus pursuant to K.S.A. 60-1507. In the motion, Olson made various claims, including a claim that his Sixth Amendment rights were violated by ineffective assistance of counsel at his probation revocation hearing. After much procedural maneuvering, the district court ultimately ruled that it was necessary to hold an evidentiary hearing to determine whether Holmes was ineffective for failing to call Wygant as a witness at the probation revocation hearing, and if he was ineffective, whether Olson was prejudiced.

The evidentiary hearing was held on September 8, 2014. Olson called Wygant to testify at the hearing. Wygant testified by phone. Wygant testified that Olson was one of his clients when he was a program manager and counselor at Mirror. On July 11, 2006, Wygant held a group session that Olson attended. There was a sign-in sheet for the attendees, and Wygant signed off on the sheet. The group session was from 6 to 8 p.m., and there were 24 people in the group session that evening.

4

Wygant testified that when the police arrived at 6:55 p.m., he told them that Olson had signed in around 5:50 p.m. However, Wygant acknowledged that there may have been a period of time where Olson was outside smoking and Wygant was not observing him. Wygant testified that he had conveyed all of this information to Pearson and denied lying to the police about the incident.

Olson also testified at the hearing. Olson testified that the only time he spoke with Holmes, his attorney, was during an elevator ride on the morning of the probation revocation hearing. Olson wrote Holmes a letter from jail informing him of what happened that evening and providing the names and phone numbers of people he wanted subpoenaed. Olson once again testified that he arrived at Mirror at 5:45 p.m. on July 11, 2006, signed in, and remained at the treatment session until 8:00. Olson admitted into evidence his attendance card, signed by Wygant, that stated he was at the treatment session from 6 to 8 p.m. Olson again denied going to Kandee's house that evening.

Holmes also testified at the hearing. Holmes testified that he had little independent recollection of representing Olson, but he had been provided an opportunity to review the transcript from the probation revocation hearing that assisted him in remembering the case. Holmes also reviewed Sack's report, Pearson's report, and the motion for revocation before the hearing. Holmes testified that he decided not to call Wygant as a witness at the probation revocation hearing because Pearson's testimony that Wygant had admitted lying to the police made him a bad alibi witness. Holmes testified that he was aware that 15 to 20 people were at the treatment session, but he did not investigate whether they could be possible alibi witnesses. He also did not check for documentation that Olson had checked into treatment that evening. Holmes testified that he did not speak to the witnesses or look into the documentation because, based on the reports he had reviewed, there was no witness who could testify that he or she was with Olson the entire evening.

5

Pearson was not available on September 8, 2014, so the hearing was continued until November 18, 2014. When the parties reconvened, Olson objected to Pearson testifying about what Wygant had said to her back in 2006 because these statements and the statements Wygant made to police were inadmissible hearsay and double hearsay as Wygant was no longer available for cross-examination. The district court overruled the objections because Wygant had already been examined about the issue.

Pearson testified at the hearing, and her account was consistent with the testimony she originally provided at the probation revocation hearing. Pearson testified that when she spoke with Wygant back in 2006, he told her that he had lied to the police about Olson being present during the entire counseling session. According to Pearson, Wygant acknowledged that Olson could have left the treatment session and later returned during a break when everyone was outside smoking.

After hearing the evidence, the district court found that Holmes was ineffective for failing to interview Wygant and other attendees of the treatment session before the probation revocation hearing. However, the district court found that there was no prejudice from Holmes' ineffectiveness because: (1) the evidence showed that Wygant was aware, or at least understood, it was very possible that Olson could have gone to Kandee's residence on the evening in question even though Olson had signed in for the treatment session; (2) the evidence showed that even though Wygant did not testify at the probation revocation hearing, the judge at the hearing had addressed Wygant as to what his testimony would have been, and Wygant's response did not change the result of the hearing; and (3) the evidence showed that the judge at the probation revocation hearing had been satisfied that Olson violated the no-contact order based on the testimony of Kandee, Sack, and Pearson. Accordingly, the district court denied Olson's K.S.A. 60-1507 motion. Olson timely appealed.

6

On appeal, Olson argues that the district court erred when it found that he was not prejudiced by Holmes' ineffective representation at the probation revocation hearing. Olson also argues that the district court erred when it allowed hearsay testimony at the evidentiary hearing on the K.S.A. 60-1507 motion. Although Olson's original K.S.A. 60-1507 motion asserted many additional claims for relief, Olson does not pursue these claims on appeal. Issues not briefed by the appellant are deemed waived and abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

The district court conducted a full evidentiary hearing on Olson's motion. After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271). An appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

*Ineffective assistance of counsel*

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a *reasonable probability* the factfinder would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014), relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014).

7

An ineffective assistance of counsel challenge presents mixed questions of law and fact. Appellate courts review the underlying factual findings of the district court for substantial competent evidence. *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). The district court's legal conclusions are reviewed de novo. 299 Kan. at 343.

The district court found that Holmes' representation was deficient in two respects. First, the district court found that Holmes' representation was deficient for failing to interview Wygant prior to the probation revocation hearing. Second, the district court found that Holmes' representation was deficient for failing to interview the other attendees of the treatment session prior to the hearing. On appeal, the parties are not challenging the district court's conclusion that Holmes' representation was deficient. Thus, the only inquiry for this court is whether Holmes' deficiencies prejudiced Olson. Stated differently, the proper inquiry is whether there is a *reasonable probability* that had Holmes interviewed Wygant and the other attendees of the treatment session, the district court would not have revoked Olson's probation. See *Sola-Morales*, 300 Kan. at 882.

It appears from the evidence that Holmes' failure to call Wygant as a witness at the probation revocation hearing was not critical to the outcome of the hearing. Although Wygant ultimately testified that Olson was at the treatment session on July 11, 2006, from about 5:50 p.m. to 8 p.m., he acknowledged that there was a break in the session during which Wygant was not observing Olson. Other witnesses established that Olson could have gone to Kandee's residence during this break. Moreover, although Wygant did not testify under oath at the probation revocation hearing, the judge addressed Wygant at the conclusion of the hearing and heard his version of the events on the night in question.

More importantly, the allegation that Olson violated the no-contact order was firmly established by Kandee's direct testimony, which the district court chose to believe, that Olson was at her residence for a brief time on the evening in question. Kandee's testimony was corroborated by Sack who interviewed Kandee and McGill on the evening

in question, and both stated that Olson had been at Kandee's residence. Also, Sack interviewed Olson and when he checked the engine compartment of Olson's car, he noticed it was very hot which indicated to him that the engine recently had been running. Based on this evidence, which Olson did not refute at the K.S.A 60-1507 hearing, there is no reasonable probability that the result of the probation revocation hearing would have been different had Wygant testified at the hearing.

As to Holmes' failure to interview other attendees of the treatment session, what their actual statements or testimony would have been is unknown. Without knowing what these witnesses would have testified, it is impossible to say that there is a reasonable probability that the district court would not have revoked Olson's probation had Holmes interviewed these witnesses. For all these reasons, we conclude that the district court's finding that Olson failed to establish prejudice as a result of Holmes' deficient performance is supported by substantial competent evidence in the record.

*Hearsay objection*

Next, Olson claims district court erred when it allowed hearsay testimony at the evidentiary hearing on his K.S.A. 60-1507 motion. Specifically, Olson argues that the district court erred when it allowed Pearson to testify about her 2006 conversation with Wygant even though he was no longer available for cross-examination. The State argues that hearsay may be admitted in a probation revocation proceeding if it has a substantial indicia of reliability. The State also notes that Olson could have recalled Wygant as a witness at the K.S.A. 60-1507 hearing if he had chosen to do so.

The standard of review for the admissibility or exclusion of evidence depends upon the level of discretion that the district court exercises in deciding whether or not to admit the evidence. *State v. Cosby*, 293 Kan. 121, 126-27, 262 P.3d 285 (2011) (quoting *State v. Boggs*, 287 Kan. 298, 307, 197 P.3d 441 [2008]). If the issue on appeal is a

9

challenge to the district court's legal basis for the admission or exclusion of evidence, the appellate standard of review is de novo. 293 Kan. at 126-27. Here, Olson is claiming that the district court did not have a legal basis to admit the hearsay statements of Wygant; thus, our standard of review is de novo.

Hearsay evidence is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated" and is inadmissible. K.S.A. 2015 Supp. 60-460. However, there are many exceptions to this general rule. One exception provides that "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by the declarant while testifying as a witness" is admissible. K.S.A. 2015 Supp. 60-460(a).

This exception is applicable to Wygant's statements to Pearson. Wygant previously testified by phone at the hearing on the K.S.A. 60-1507 motion, and his testimony covered the same subject matter about which Pearson later testified. Wygant was not in the courtroom when Pearson testified, but he had never been in the courtroom during the hearing because his testimony was provided by phone. There is nothing in the record to indicate that Olson could not have called Wygant for further cross-examination after Pearson testified. Because Wygant previously had testified at the hearing and there is nothing to indicate that he was not available for further cross-examination, the hearsay statements were admissible under K.S.A. 2015 Supp. 60-460(a). See *State v. Miller*, 284 Kan. 682, 709-11, 163 P.3d 267 (2007) (hearsay admissible under K.S.A. 60-460[a] if declarant previously testifies at hearing and is subject to cross-examination with respect to statement and its subject matter); *State v. Hicks*, 240 Kan. 302, Syl. ¶ 2, 729 P.2d 1146 (1986) ("[K.S.A. 60-460(a)] does not require that the witness be physically present in the courtroom at the time the hearsay testimony is given.").

Finally, any error in admitting the hearsay testimony was harmless. The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2015 Supp. 60-261. Under statutory harmless error analysis, the party benefiting from the error must persuade this court that there is no reasonable probability that the error affected the proceeding's outcome in light of the entire record. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

As we have previously stated, Wygant's testimony was not critical to the outcome of the probation revocation hearing because he could not account for Olson's whereabouts during the entire evening in question. Moreover, Pearson's testimony at the hearing on the K.S.A. 60-1507 motion was substantially the same as her testimony at the probation revocation hearing. As a result, there is no reasonable probability that Pearson's testimony about the statements Wygant made to her affected the outcome of the proceedings in light of the entire record. Any error was harmless and does not warrant reversal of the district court's decision to deny Olson's K.S.A. 60-1507 motion.

Affirmed.