John SEFICK, Plaintiff–Appellant,

v.

Richard GARDNER, Defendant–Appellee.

No. 98–1632.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1998.

Decided Dec. 28, 1998.

Edward M. Fox (argued), Shefler & Berger, Chicago, IL, for plaintiff-appellant

Thomas P. Walsh, Office of the United States Attorney, Chicago, IL, Jeffrica Jenkins Lee (argued), Department of Justice, Washington, D.C., for defendant-appellant.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

John Sefick creates satirical sculptures that he seeks to place in the lobbies of buildings connected to the events or persons being lampooned. Sefick's works combine public figures with audio tapes that deliver the point. For example, in 1979 Sefick mounted in the Richard J. Daley Civic Center a tableau of Michael Bilandic, who had recently been defeated for re-election as mayor (in part because of adverse public reaction to the City's handling of snow removal in the winter of 1978–79), relaxing in an easy chair, with his wife Heather perched on the chair's arm. A tape recording continuously played this statement in a parody of Bilandic's voice:

Heather, Heather, I think it is still snowing out there, Heather. I think it is still snowing. God, it must be around eight feet now, isn't it, Heather? At least eight feet. Maybe another log on the fire, Heather. Maybe another log on the fire. On the fire, another log on the fire, Heather. It is beginning to snow again. Another log on the fire, Heather. I think it is beginning to snow once again. My God, it must be eight feet out there now, Heather. I don't know what to do. What do you think we should do, Heather?

*Sefick v. Chicago*, 485 F.Supp. 644, 647 (N.D.Ill.1979). Sefick has placed sculptures in state and federal buildings throughout Chicago. But in 1996 the General Services Administration refused to permit Sefick to exhibit a sculpture in the lobby of the Everett McKinley Dirksen Federal Courthouse, the headquarters of the United States Court of Appeals for the Seventh Circuit and the United States District Court for the Northern District of Illinois, precipitating this litigation.

Sefick proposed to display a life-sized rendering of District Judge Duff astride a larger-than-life white horse. Horse and rider would be familiar to readers of political cartoons. Both are distorted; the horse, for example, has an elongated neck, eyes cast upward with exaggerated whites, legs without visible joints, and squared-off shoulders, haunches, and chest. Judge Duff appears to be smiling and is holding the reins. The piece is eight feet tall and occupies approximately 35 square feet of floor space. A foot pedal activates a tape recording. Sefick described the sculpture, the accompanying tape, and its meaning in an attachment to his application:

The Journey of Judge Brian Barnett Duff

The Judge arrives at the Dirksen Federal Building atop a giant symbolic steed representing the United States Court system. The horse pauses. The Judge speaks, "As for the life of me I can't figure out why they're overturning all my rulings upstairs. Must be a lack of understanding. If they got their facts straight, they'd see it my way. Even if I didn't know better I think they trying to usurp my powers. That could be it. Oh great horse!" The horse overburdened, staggers under the tremendous weight of all its duties and responsibilities. Peer review, nonpeer review, pinpoint judicial review and just general criticism.

The GSA turned down Sefick's request under the Public Buildings Cooperative Use Act, 40 U.S.C. § 490(a)(17), citing ongoing construction in the building's lobby as the principal reason and a concern that the exhibit "may be construed as an attempt to influence judicial proceedings" as a secondary reason. Sefick was offered and accepted the option of displaying the sculpture in the nearby Metcalfe Federal Building, where it appeared for two weeks. After Judge Duff retired from active service, Sefick revised his work to replace the tape with a recording of "Don't Cry For Me, Argentina" from *Evita* and asked again to display it in the Dirksen Courthouse. Once again the GSA said no, relying on continuing construction activity and security concerns that had led it to deny all applications for the time being. Sefick then commenced this litigation, contending that the GSA's refusal to permit the sculpture's display in the courthouse was viewpoint discrimination. After a bench trial, a judge from outside the Northern District of Illinois concluded that the GSA's stated reasons were honest and that no viewpoint dis-

crimination had occurred. 990 F.Supp. 587 (N.D.Ill.1998).

■ At oral argument we inquired whether the case is moot. Sefick did not ask for damages but sought to have his sculpture displayed without regard to its message. One month before the trial, the GSA decided that for security and aesthetic reasons it will not authorize displays of any kind in the lobby of the Dirksen Courthouse. Today the nature and message of a sculpture is irrelevant; none will be displayed. The district judge did not mention this change in policy or inquire whether it moots the dispute, and the parties' appellate briefs likewise ignored the question whether there is an ongoing case or controversy. After reviewing the post-argument briefs filed at our request, we conclude that the case is live, for two reasons. First, a court could order Sefick's sculpture displayed as a remedy for a violation of his first amendment rights in 1996 and 1997, even though in 1998 the GSA stopped considering applications for new displays. See *In re UNR Industries, Inc.*, 20 F.3d 766, 768 (7th Cir.1994). Second, the current no-display policy, adopted after the commencement of this suit, is not implemented by statute or regulation and could be changed again, so this voluntary cessation of the challenged conduct does not eliminate the controversy. See *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 305 n. 14, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Cf. *Los Angeles v. Lyons*, 461 U.S. 95, 100–01, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Parks v. Pavkovic*, 753 F.2d 1397, 1403–04 (7th Cir.1985).

■ Sefick can prevail on the merits of his appeal only by establishing that the district judge, as trier of fact, was clearly erroneous in concluding that the GSA did not discriminate against his sculpture because it was critical of the judiciary. Given the extensive construction in the lobby at the time of his applications, and the security concerns that in the wake of the Oklahoma City bombing have led many federal buildings to restrict pedestrian traffic (and exhibits that might attract it), that demonstration is hard to make. All four walls of the lobby in the Dirksen Courthouse are glass, so anything unusual inside will attract attention and thus traffic, which makes life more difficult for those charged with maintaining security. Moreover, Sefick displayed another sculpture of Judge Duff in 1995,* before the Dirksen Building was renamed the Dirksen Courthouse to reflect its transformation from a mixed-use to a judiciary building. If the GSA is set against sculpture critical of federal judges, why did it permit the display in 1995?

■ But even if Sefick could persuade us that in 1996–97 the GSA held the work's satirical perspective against him, that would just raise the question: what's wrong with insisting that exhibits in a federal courthouse be dignified? The lobby of the courthouse is not a traditional public forum or a designated public forum, not a place open to the public for the presentation of views. No one can hold a political rally in the lobby of a federal courthouse. It is a "nonpublic forum," which government "may reserve ... for its intended purposes". *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). When deciding what may be displayed in a nonpublic forum, the government may exercise considerable selectivity, see *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998); *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Piarowski v. Illinois Community College*, 759 F.2d 625 (7th Cir.1985), provided it does not transgress basic anti-discrimination rules. Thus it may forbid all political rallies, but it may not forbid one party's rallies while allowing another's. See *Forbes*,

---

* The 1995 sculpture depicts Judge Duff "tongue lashing" an unseen person, following which the model Cindy Crawford enters, the judge speaks rapidly to her, and Crawford stands her ground with a look of "Who *is* this guy?". Sefick later added TV commentator Walter Jacobson to the tableau to increase its humor quotient. See Jan-an Hanna, Bill Crawford & John O'Brien, *Pair Supermodel, Good–Hearted Judge; Will Sparks Fly?*, Chicago Tribune (Feb. 14, 1995); Hanna, Crawford & O'Brien, *Barings Demise Not Likely to Slow Pace of the Pacific Rim*, Chicago Tribune (Mar. 14, 1995).

118 S.Ct. at 1643; *Chicago Acorn v. Metropolitan Pier & Exposition Authority*, 150 F.3d 695 (7th Cir.1998).

Nothing in the first amendment prevents the government from allowing sedate and decorous exhibits—the lobby of the Dirksen Courthouse contains the Great Seal of the United States, copies of the Constitution and Declaration of Independence, a memorial to a deputy marshal killed in the line of duty, and a bust of Senator Dirksen—while excluding the comic, the caustic, and the acerbic. Courts seek to induce in the jurors, witnesses, and litigants who pass through the lobby on the way to the courtrooms a serious cast of mind. An implication in the lobby that judges do not take their oaths seriously, deal honestly with the facts, or respect the allocation of authority within the judiciary could undermine the seriousness with which other participants take their own oaths and tasks. The judiciary does not show reruns of the Three Stooges in courthouse lobbies, and from the perspective of promoting the judicial mission a sculpture satirizing judges would be worse than old physical comedies. No one doubts that displays in courtrooms and adjacent corridors may be limited to the icons of government, such as seals and flags, and that judges may insist that all those present behave in a dignified manner. Why should this be less true of the lobby? Newspapers and the streets outside are open to scathing criticism of what happens within the courthouse. See *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). But the halls of justice may be kept hushed. A preference for the somber over the sardonic within a courthouse is not viewpoint or even subject-matter discrimination. It is a standard time, place, and manner limitation. A courthouse is not the place for this manner of expression. Daumier's caricatures of lawyers, judges, and witnesses belong in a museum (or a political magazine, where they originally appeared), not in the lobby of the Dirksen Courthouse.

The lower level of the Supreme Court building contains art and exhibits. Descending a grand marble staircase, the visitor encounters an imposing statue of John Marshall, sitting as if enthroned. Corridors are lined with portraits of former Justices, dioramas illustrating famous cases, and material from the Court's history. We asked Sefick's lawyer at oral argument whether the Constitution entitles his client to install in this gallery a clangorous, plaster-of-Paris work satirizing the current Chief Justice (perhaps with a patter song from *Trial by Jury* substituted for the theme of *Evita*). Counsel was unwilling to claim that the first amendment prevents the Supreme Court from limiting its display to hagiography. Yet a demand to install a sculpture on the Supreme Court's ground floor would be much stronger than a demand to put a sculpture in the Dirksen Courthouse's lobby, for the Supreme Court has opened its space to art about the judiciary, while the Seventh Circuit has not. The Supreme Court favors the Supreme Court Historical Society (a private group) over artists such as Sefick; no similar favoritism is ongoing (or occurred in 1996–97) in the Dirksen Courthouse. Portraits of judges line the corridors and main courtrooms of the Dirksen Courthouse, but an artist's claim to have his own satirical portrait of a judge placed among these would be met with guffaws. Just so with a demand for display space in the courthouse lobby. "The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." *Cornelius*, 473 U.S. at 811, 105 S.Ct. 3439.

AFFIRMED.

