NOT DESIGNATED FOR PUBLICATION

No. 117,870

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW BARTELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed February 22, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PER CURIAM: A jury convicted Andrew Bartell of arson. Bartell appeals his conviction, raising five claims: (1) The district court violated his right to counsel by allowing him to make closing argument; (2) the district court violated his First Amendment rights by not allowing him to wear a "Black Lives Matter" t-shirt during trial; (3) the district court erred when it instructed the jury Bartell could be found guilty if he committed arson recklessly; (4) the prosecutor shifted the burden of proof during closing argument; and (5) cumulative error denied him a fair trial. While the challenged jury instruction and the prosecutor's comments both appear to be error, the errors are harmless and we affirm.

1

Bartell, a 26-year-old student at the University of Kansas, was visiting his grandparents in Holton in early July 2016. On July 3, Bartell's grandparents' neighbor, Steven Battles, had parked his truck on the street near Bartell's grandparents' home. Battles' truck had a Confederate flag painted on the hood and a Confederate flag flying from the bed. Bartell found this very disrespectful because he felt the Confederate flag was "a symbol of hatred, slavery and the KKK."

Bartell went to Battles' house and told Battles to move the truck. According to Battles' understanding, Bartell did not want the truck near his grandparents' property. But Battles refused to move his truck because he had not parked it directly in front of Bartell's grandparents' house. Bartell then went to the police station to complain, but the police did not make a report.

The next day, Jeffrey Cannon and his mother were sitting on their deck when they saw Bartell walk from his grandparents' house and down the sidewalk to Battles' truck. According to Cannon, Bartell was wearing a black t-shirt with a tuxedo graphic on the front. Bartell stopped and appeared to take pictures of the truck with his phone. He then walked back to his grandparents' house.

Shortly afterwards, Bartell returned to the truck carrying a red gas can. Cannon called the police as Bartell poured gas all over the truck and the flag. Bartell then lit the truck on fire with a match and slowly walked back to his grandparents' home.

Officer Brian Barber of the Holton Police Department was only three or four blocks away when he received a call that someone was pouring gasoline on a parked car. When he reached the scene, he saw Bartell in a black shirt walking away from the truck while carrying a red gas can. Barber ran up to Bartell and ordered him to stop. Bartell

2

dropped the gas can and a box of matches on the ground. Barber later found photographs of Battles' truck on Bartell's phone.

The State charged Bartell with arson. He wore a "Black Lives Matter" t-shirt to every pretrial hearing. The district court allowed Bartell to wear the shirt at those hearings but advised him that he should not wear it at trial. In response, Bartell filed a motion asking the court to allow him to wear the shirt during trial, arguing he had a right to free speech and wearing the shirt during the trial would not unduly prejudice the jury. After a hearing, the court denied Bartell's request. Before trial, Bartell renewed his motion, and the court again denied it.

After the State rested its case-in-chief, Bartell requested to give his own closing statement. After a discussion, the district court allowed Bartell to give his closing statement but emphasized that he would be subject to the same rules as an attorney. Defense counsel requested a chance to speak with Bartell to verify he still wanted to give closing argument.

In his closing, Bartell did not deny that he had set Battles' truck on fire. Instead, he emphasized he believed the Confederate flag was a symbol of racism and displaying it was essentially a hate crime. He felt that if he failed to do anything about it, he would be complicit in that crime. He also believed the flag was a gang symbol and displaying it near his grandparents' home put them in danger of a violent attack from a rival gang. He tried to have the Confederate flags removed by legal means, but to no avail. As a result, he felt compelled to take action himself.

The jury convicted Bartell of arson. The district court sentenced him to 24 months' probation with an underlying sentence of 13 months' imprisonment. The court also ordered Bartell to pay Battles $500 in restitution. Bartell appeals.

3

*Right to Counsel*

Bartell argues the district court violated his right to counsel by allowing him to give his own closing argument. He asserts the court should have obtained a knowing and intelligent waiver of his right to counsel but did not do so. The State responds that Bartell did not unequivocally assert his right to self-representation. Instead, the court used its discretion to allow Bartell to have hybrid representation, and no waiver was necessary.

Bartell concedes he did not object when the district court allowed him to give closing argument without first requiring him to waive his right to counsel. But he contends we should still hear his argument because it involves only a question of law and would prevent the denial of a fundamental right.

An appellant generally cannot raise constitutional issues for the first time on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). One exception to this general rule is when consideration of a new legal theory is necessary to serve the ends of justice or prevent the denial of fundamental rights. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Because the right to counsel is a fundamental right, we may address Bartell's argument for the first time on appeal. See *State v. Loggins*, 40 Kan. App. 2d 585, 595, 194 P.3d 31 (2008) (reviewing denial of fundamental right to counsel for the first time on appeal).

Additional facts are necessary to evaluate this issue. The district court appointed Andrew Delaney to represent Bartell. Delaney represented Bartell at his pretrial hearings, filed motions on his behalf, and provided proposed jury instructions. At trial, Delaney conducted voir dire, gave an opening statement, and cross-examined the State's witnesses.

4

After the State rested, Delaney asked the district court if Bartell could give his own closing statement. In response, the court told Delaney and Bartell:

"Well, I don't know if there is a lot to say about it. He's entitled to an attorney but also he's entitled to present his own defense if he desires to do so. Obviously, that is more of a concern where the person is trying to go through the trial but you've been doing that, Mr. Delaney, and he hasn't asked you not to. I guess my only comments would possibly be, Mr. Bartell, just because you're not a lawyer, when you give closing, if you give the closing statement, the standards would still apply to you. There may be objections to things you say. And if the State objects, you would need to stop and allow the Court to rule on the objection and then give directions on whether you should continue or whether you need to modify what you're saying. You may—sometimes when that happens, you may view that simply as a tactic by the State to throw you off your game. But if they think there is something objectionable, they're entitled to do that. Mr. Delaney, being more familiar with the rules of evidence and having certain ethical duties, knows that. And in his closing, obviously, he would conform to the rules of evidence and to the ethical duties. So I'm just reminding you, if you choose to do this, that doesn't entitle you to necessarily just say anything you darn well want to. Although, it's pretty broad when it comes to closing arguments even for Defense counsel. Keep in mind, though, that the Court will also provide the jury with an instruction in which they are told that—on this case we may have to modify. Typically, they're told remarks of counsel are not evidence. They can be considered in terms of persuasiveness but they are not evidence. And I don't want you to somehow misunderstand that if you decide not to testify on your own behalf, because I think you're going to essentially do the same thing in closing. You may be able to say similar things but it would not be evidence and the jury would be instructed to and are instructed in all cases to essentially disregard any part of an opening or closing that does not conform to the evidence presented. So in that sense, anything you say is not evidence. And if there were things that you thought were important to say that would affect the jury's verdict and there is an appeal, you wouldn't be in a position to tell the appellate court, well what about this evidence, I said this. Again, anything you say not under oath is not evidence. And so I want to caution you that—not suggesting you're trying to get around that—but I want you to make a decision like this knowing full well the repercussions of that. Because, if you decide not to testify, that's your chance to

5

testify. Once . . . the Defense rests, you're done in terms of presentation of evidence, barring some extremely unusual rebuttal from the State. Do you understand what I've been telling you, Mr. Bartell?"

Bartell confirmed he understood, and Delaney asked to speak with Bartell again to verify he wanted to give his own closing.

Delaney continued to represent Bartell during presentation of the defense's case and the State's rebuttal. Bartell then gave closing argument. After the jury returned the verdict, Delaney asked to have the jury polled and to schedule the sentencing hearing. Delaney filed posttrial motions on Bartell's behalf, represented him at his sentencing and restitution hearings, and filed his appeal.

The main issue here is whether Bartell asserted his right to self-representation and waived his right to counsel by requesting to give his closing argument. "The extent of the right to assistance of counsel and the related right to self-representation is a question of law over which this court exercises unlimited review." *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

Under the Sixth Amendment to the United States Constitution, criminal defendants have a right to counsel at every critical stage of their trial. In Kansas, they have a similar state constitutional right as well as a broader statutory right to counsel at every stage of their trial. Kan. Const. Bill of Rights, § 10; K.S.A. 22-4503(a). That said, Bartell asserts closing argument is a critical stage of trial.

The Sixth Amendment also provides criminal defendants with the right to self-representation. Defendants who clearly and unequivocally express a wish to exercise this right may do so after a knowing and intelligent waiver of their right to counsel. "A knowing and intelligent waiver requires that the defendant be informed of 'the dangers

6

and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010).

Kansas courts have a three-step process to determine if defendants have knowingly and intelligently waived their right to counsel. First, defendants should be advised of their right to counsel and their right to appointment of counsel if they are indigent. Second, defendants must have the intelligence and ability to appreciate the waiver's consequences. Third, defendants must understand the charges and proceedings, the range of punishments, and all facts necessary to a broad understanding of the case. *State v. McCormick*, 37 Kan. App. 2d 828, 839, 159 P.3d 194 (2007).

While defendants have the right to counsel and the right to self-representation, they do not have a right to hybrid representation. Even so, a district court may allow hybrid representation. See *State v. Holmes*, 278 Kan. 603, 620-21, 102 P.3d 406 (2006). Bartell acknowledges that he was granted hybrid representation here because Delaney represented him at every stage of the proceeding except closing argument. But he argues that hybrid representation is essentially a decision to proceed pro se and therefore requires a knowing and intelligent waiver of the right to counsel.

The State argues Bartell's decision to give his own closing statement was not an election to proceed pro se and did not require a waiver. In support, the State cites *State v. Martin*, 241 Kan. 732, 738, 740 P.2d 577 (1987), in which the Kansas Supreme Court held that a district court does not need to obtain a knowing waiver before allowing a defendant to act as co-counsel. There, the defendant moved to act as co-counsel after the district court appointed an attorney for him, and the court granted his motion. His only act as co-counsel was to cross-examine one witness. On appeal, the defendant argued the district court erred in allowing him to act as co-counsel without first obtaining a knowing and intelligent waiver of his right to counsel. The *Martin* court rejected this argument,

7

noting: "[T]his is not a case of pro se representation. Martin merely requested he be permitted to be co-counsel." 241 Kan. at 738. As a result, the district court did not need to warn him of the dangers of proceeding pro se or obtain a waiver of his right to counsel. 241 Kan. at 738.

The State also finds support for its position from other jurisdictions. The Tenth Circuit Court of Appeals has held that a defendant did not unequivocally invoke his right to self-representation when he gave an opening statement and thus no waiver of the right to counsel was needed. See *United States v. Treff*, 924 F.2d 975, 978-79 & n.6 (10th Cir. 1991). Other jurisdictions have reached similar conclusions. See, e.g., *United States v. Robinson*, 783 F.2d 64, 67 (7th Cir. 1986) (holding defendant need not make a knowing waiver of counsel before giving closing statement with counsel's guidance); *State v. Leady*, 679 S.W.2d 292, 294 (Mo. App. 1984) (holding hybrid representation is exercise of right to counsel not waiver of it).

In *Phillips v. State*, 604 S.W.2d 904, 907-08 (Tex. Crim. App. 1979), the Texas Court of Criminal Appeals held that when defendants opt for hybrid representation, they are not entitled to warnings on the dangers of self-representation. The court explained:

> "These admonishments are to be given to a pro se defendant to insure that he is informed of the dangers involved when he waives counsel. Although appellant partially represented himself in this case, he was also fully represented by counsel. Thus, no question of waiver of counsel is involved. Absent such issue arising, we cannot conclude that the trial court erred in failing to admonish appellant as to the dangers, if any, of this form of hybrid representation." 604 S.W.2d at 908.

See *State v. Layton*, 189 W. Va. 470, 479, 432 S.E.2d 740 (1993); *State v. Barker*, 35 Wash. App. 388, 395-96, 667 P.2d 108 (1983).

Conversely, Bartell cites two other jurisdictions that have held some hybrid representations are an election to proceed pro se and thus require a waiver of the right to counsel. In *Com. v. Palmer*, 315 Pa. Super. 601, 608-09, 462 A.2d 755 (1983), the Pennsylvania Superior Court held the defendant partially waived his right to counsel by giving opening statement and examining witnesses, and the district court had to give a partial waiver colloquy under state law. In *State v. Frye*, 224 Conn. 253, 256-57, 617 A.2d 1382 (1992), the Connecticut Supreme Court held the defendant partially waived his right to counsel by cross-examining witnesses and giving closing argument, and the district court had to give a full waiver colloquy. See also *Brooks v. State*, 703 So. 2d 504, 506-07 (Fla. App. 1997) (holding district court erred in not giving full waiver colloquy when defendant conducted pretrial activities and gave opening statement after asking to serve as co-counsel).

Bartell cites *Com. v. Brazil*, 549 Pa. 321, 326, 701 A.2d 216 (1997). There, the Pennsylvania Supreme Court held the district court has to give a full waiver colloquy when a defendant proceeds pro se with standby counsel. 549 Pa. at 326. As Bartell admits, *Brazil* appears to undermine the holding in *Palmer* but did not directly overrule it. In both cases, defendants had standby counsel, but in *Palmer*, standby counsel appears to have played a more significant role. *Brazil*, 549 Pa. at 324; *Palmer*, 315 Pa. Super. at 608-09. It is not clear if this was the basis for different decisions or if *Brazil* is a departure from *Palmer*.

The State argues these cases are distinguishable because the defendants played a more significant role at trial than Bartell did. In addition to giving opening statement or closing argument, both defendants also examined witnesses. The State also adds that these cases are not binding on this court.

The State also asserts that Bartell essentially benefitted from being able to give his own closing argument. He presented many facts not in evidence, telling the jury about his

9

educational pursuits, his community service, and his motivations in taking action to prevent a hate crime. He also stated that the Confederate flag was a recognized gang symbol according to Police Magazine. The State only interrupted him to object once. By giving his own closing argument, Bartell was effectively allowed to make an unsworn statement to the jury without being subject to cross-examination. See *Robinson*, 783 F.2d at 66-67.

Following *Martin*, *Treff*, and *Layton*, we find Bartell did not waive his right to counsel when he chose to give his closing argument. While he partially represented himself, he was also fully represented by counsel. He did not unequivocally invoke his right to proceed pro se by asking to give closing argument. Based on the facts of this case, we find that the district court did not err in failing to have Bartell waive the right to counsel.

We could find that Bartell's partial waiver of his right to counsel only required a partial waiver colloquy. As Bartell admits, the district court told him he would be held to the same standards as an attorney, and Delaney would be better prepared. The court also explained the rules of closing argument and confirmed that Bartell understood them. See *Palmer*, 315 Pa. Super. at 610-11 (holding that when defendant partially waives right to counsel "[i]t is sufficient if the court instructs the accused on those aspects of the trial for which he seeks to represent himself"). The court's colloquy meets this standard.

*First Amendment Rights*

Next, Bartell argues the district court violated his First Amendment rights when it denied his request to wear a Black Lives Matter t-shirt during his trial. He argues a courtroom is a designated public forum for First Amendment purposes and any restriction on his speech must be narrowly drawn to achieve a compelling State interest. He

10

contends the court's restriction did not serve a compelling State interest and the court could have adopted other less restrictive measures.

The State counters we should find a courtroom is a nonpublic forum. In nonpublic forums, restrictions on speech need only be reasonable and viewpoint neutral. The State asserts the district court's order met both these requirements.

While the district court allowed Bartell to wear a Black Lives Matter t-shirt during pretrial hearings, the court denied his request to wear the same t-shirt during trial. In its journal entry, the court explained:

> "The Court finds here that the Defendant's shirt is an attempt to communicate a message that is neither under oath nor an exhibit at trial. The message is intended to either appeal to the sympathy of the jurors, inflame the jury or both. The message in this case cannot help but be seen as political. The shirt both makes a statement and has the name of a political movement on it. The Court believes the shirt will unfairly distract from this trial by attempting to turn a case involving destruction of property by fire into a political trial questioning the proper use and display of the [C]onfederate battle flag and/or the use of fire as a political necessity. The Defendant is free to make his political views known outside the confines of the courtroom. Further, the Court understands that the Defendant intends to exercise his right to testify in his own defense. Certainly, within the bounds of relevance the Defendant may testify why he did or did not do the crime he is accused of committing. But to confront the jury throughout the trial with an overt message that a jury cannot help but believe has some significance to the proceedings is not appropriate and likely to cause prejudice."

At the motion hearing, the court stated it would also likely require any spectators at the trial to change if anyone was wearing a Confederate flag or a Black Lives Matter t-shirt.

Ordinarily, appellate courts review a district court's order on courtroom decorum for an abuse of discretion. See *State v. McNaught*, 238 Kan. 567, 577-78, 713 P.2d 457

11

(1986). "In the administration of justice, the trial judge is charged with the preservation of order in his or her court with the duty to see that justice is not obstructed by any person or persons whatsoever. A large measure of discretion resides in the trial court in this respect, and its exercise will not be disturbed on appeal unless it appears that prejudice resulted from the denial of a legal right." *State v. Speed*, 265 Kan. 26, Syl. ¶ 10, 961 P.2d 13 (1998). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Here, the parties disagree that this is the correct standard of review. While the State says the standard of review for the district court's decision is abuse of discretion, Bartell asserts it is de novo because it involves a question of law. But a district court necessarily abuses its discretion when it makes an error of law. In such cases, the standard may more accurately be described as a question of law requiring de novo review. See *State v. Gary*, 282 Kan. 232, 236, 144 P.3d 634 (2006); *City of Arkansas City v. Sybrant*, 44 Kan. App. 2d 891, 901, 241 P.3d 581 (2010) (holding abuse of discretion standard more accurately characterized as de novo when reviewing whether district court erred in not allowing defendant to represent himself).

The State also argues we should decline to reach this issue. It states Bartell is unable to show how the district court's order affected any fundamental right guaranteed in criminal trials. But just because Bartell's argument may ultimately fail does not mean we cannot address it. If Bartell is able to show the district court's order prejudiced him, then we can provide relief.

Bartell claims the district court's order violated his rights to free speech under the First Amendment to the United States Constitution and § 11 of the Kansas Constitution Bill of Rights. Analyzing Bartell's claim involves a three-step analysis. First, we must determine whether Bartell's t-shirt qualifies as speech. If so, we must then determine what

12

type of forum a courtroom is for First Amendment purposes. Finally, we must determine if the district court's restriction of Bartell's speech meets the requisite standard for the type of forum. See *Cornelius v. NAACP Legal Defense & Ed. Fund*, 473 U.S. 788, 797, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985).

As the State notes, the United States Supreme Court has characterized wearing political t-shirts as speech. *Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576, 107 S. Ct. 2568, 96 L. Ed. 2d 500 (1987). As a result, the State acknowledges that Bartell's "Black Lives Matter" t-shirt is protected speech because it makes a political statement.

Next, we must determine what type of forum a courtroom is, as this will determine the level of protection the First Amendment gives to speech on that property. The United States Supreme Court has identified three types of forums: traditional public forums, designated public forums, and nonpublic forums. *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45-46, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). Traditional public forums are places traditionally devoted to public assembly and debate, such as parks and public streets. *Cornelius*, 473 U.S. at 802. Designated public forums are public places the State has opened for expressive activity by the public at large, for certain speakers, or for certain subjects. 473 U.S. at 802. And nonpublic forums are places "which [are] not by tradition or by designation a forum for public communication." *Perry*, 460 U.S. at 46.

While the United States Supreme Court has held that the public sidewalks surrounding the Court are public forums, it has not ruled on whether courtrooms are public or nonpublic forums. See *United States v. Grace*, 461 U.S. 171, 178-79, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983). That said, many other jurisdictions have held that courtrooms or courthouses are nonpublic forums. See, e.g., *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (holding that courtrooms are nonpublic forums); *Huminski v.*

13

*Corsones*, 396 F.3d 53, 90-91 (2d Cir. 2005) (holding courthouses and courtrooms are nonpublic forums); *Sammartano v. First Judicial District Court*, 303 F.3d 959, 966 (9th Cir. 2002) (holding courthouses are nonpublic forums); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (holding lobby of courthouse is nonpublic forum); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) (holding courthouses, particularly courtrooms, are nonpublic forums); *United States v. Gilbert*, 920 F.2d 878, 884 (11th Cir. 1991) (holding courthouses are nonpublic forums). As the First Circuit Court of Appeals explains:

> "A courtroom's very function is to provide a locus in which civil and criminal disputes can be adjudicated. Within this staid environment, the presiding judge is charged with the responsibility of maintaining proper order and decorum. In carrying out this responsibility, the judge must ensure 'that [the] courthouse is a place in which rational reflection and disinterested judgment will not be disrupted.' We think it is beyond serious question that the proper discharge of these responsibilities includes the right (and, indeed, the duty) to limit, to the extent practicable, the appearance of favoritism in judicial proceedings, and particularly, the appearance of political partiality. [Citations omitted.]" *Berner*, 129 F.3d at 26.

On the other hand, Bartell argues we should find that a courtroom is a designated public forum. He notes that courtrooms are open to the public. But just because a place is open to the public does not make it a public forum. See *Grace*, 461 U.S. at 177. ("Publicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will."). What matters is the primary purpose of the forum and whether that purpose is conducive to expressive activities. See *Cornelius*, 473 U.S. at 803 (holding the Court would not "infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity"). In the case of courtrooms, the primary purpose is adjudication, not communication, and thus they are less conducive to expressive

14

activities. See *Huminski*, 396 F.3d at 90-91; *Sammartano*, 303 F.3d at 966; *Berner*, 129 F.3d at 26.

Bartell adds that Kansas courts have sometimes allowed spectators to wear expressive buttons and shirts. He cites *Speed*, which held the defendant had failed to show he was prejudiced when the district court allowed spectators to wear buttons and shirts with the victim's picture on them, and *McNaught*, which held the defendant in a DUI trial failed to prove he was prejudiced when the district court allowed spectators to wear Mothers Against Drunk Driving and Students Against Drunk Driving buttons. *Speed*, 265 Kan. at 29-30; *McNaught*, 238 at 576-81. Even so, "the government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius*, 473 U.S. at 802. Thus, use of a nonpublic forum for communicative purposes does not necessarily make it a designated public forum. *People v. Aleem*, 149 P.3d 765, 776 (Colo. 2007).

We find courtrooms are nonpublic forums. A courtroom provides a place to decide civil and criminal disputes. *Berner*, 129 F.3d at 26. To fulfill this purpose, judges must be able to maintain an orderly and staid environment. 129 F.3d at 26. And this kind of environment is less compatible with expressive activity. *Huminski*, 396 F.3d at 90-91.

We must next consider whether the district court's restriction on Bartell's speech was permissible given the courtroom's status as a nonpublic forum. Bartell argues that the court's restriction was improper because it was content based but not narrowly drawn to achieve a compelling state interest. But this is the standard for speech restrictions in traditional and designated public forums. *Perry*, 460 U.S. at 45-46. As the State points out, speech in a nonpublic forum is subject to greater restriction. The State may restrict speech in a nonpublic forum as long as: (1) the restriction is reasonable; and (2) the restriction is viewpoint neutral, i.e., the State is not suppressing speech merely because of

opposition to the speaker's viewpoint. 460 U.S. at 46; *Lower v. Board of Dir. of Haskell County Cemetery Dist.*, 274 Kan. 735, 746, 56 P.3d 235 (2002).

The district court's restriction on Bartell's speech was reasonable. Whether a restriction is reasonable depends on the purpose of the forum and the restriction's circumstances. *Cornelius*, 473 U.S. at 809. As long as the restriction is reasonable, "it need not be the most reasonable or the only reasonable limitation." 473 U.S. at 808.

As noted, a courthouse is a space dedicated to the adjudication of criminal and civil disputes. *Berner*, 129 F.3d at 26. "Courtrooms must be neutral, politically impartial environments dedicated to fairness and equal treatment of litigants." *Aleem*, 149 P.3d at 776. Courts thus have an obligation to maintain courtroom order and are granted broad discretion to fulfill this obligation. *Speed*, 265 Kan. 26, Syl. ¶ 10.

In addition, a defendant's appearance may affect the right to a fair trial. For example, the State cannot compel a defendant to stand for a jury trial in prison garb because of possible prejudice. *Estelle v. Williams*, 425 U.S. 501, 504-05, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); *State v. Hall*, 220 Kan. 712, 714-15, 556 P.2d 413 (1976). But "the fact that a defendant, by his own conduct, jeopardizes his right to a fair trial is of little consequence." *Aleem*, 149 P.3d at 778 (citing *United States v. Tijerina*, 412 F.2d 661, 666 [10th Cir. 1969]).

Bartell acknowledges that the district court's interest in restricting his speech to ensure a fair trial is reasonable. The court only prevented Bartell from wearing a Black Lives Matter t-shirt during trial to prevent jury prejudice or distract from the trial. The court allowed him to wear it during pretrial hearings. It did not restrict him from expressing his views outside court or from telling the jury why he did what he did in testimony. Given the courtroom's purpose and the circumstances, the restriction was reasonable.

16

Next, we must determine whether the district court's restriction was viewpoint neutral. In determining whether a restriction is viewpoint neutral, we look to whether the district court intended to suppress a particular point of view. See *Cornelius*, 473 U.S. at 812. Bartell does not argue that the district court intended to suppress his point of view. Nor does the record suggest it did. The court forbid Bartell from wearing any apparel bearing political slogans, and it also forbid anyone else from doing likewise. The restriction was not based on the viewpoint of the speaker, but rather political speech in general.

In reaching its decision, the district court relied on *Aleem*. There, the Colorado Supreme Court held a district court did not violate a defendant's First Amendment rights when it ordered the defendant to remove a shirt with a political message. 149 P.3d at 770. The *Aleem* court explained:

> "Although the T-shirt containing political expression is protected speech, we hold that this type of speech is not protected inside a courtroom. As the trial court stated, the courtroom is a place for the presentation of evidence and not for political expression. It is a non-public forum for First Amendment purposes. A court has the authority to restrict political speech within the courtroom to preserve its purpose as a forum for adjudication of civil and criminal disputes and to protect the parties' rights to a fair trial, and here, we conclude that the trial court's restriction on Aleem's speech was both reasonable and viewpoint neutral. Hence, the trial court's order to Aleem to remove his [political] T-shirt did not violate his First Amendment rights." 149 P.3d at 770.

The Colorado Supreme Court's reasoning is persuasive. A courtroom is a nonpublic forum because its primary purpose is adjudication of criminal and civil cases. Courts must be able to restrict some expressive activities to maintain order and impartiality. The district court's restriction here was both reasonable and viewpoint neutral. The restriction did not violate Bartell's First Amendment rights.

17

*Jury Instructions*

Bartell argues the district court also erred in failing to properly instruct the jury on arson. He acknowledges he did not object to the instructions at trial, so we will not reverse his conviction unless he can show the instruction was clearly erroneous. K.S.A. 2017 Supp. 22-3414(3); *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). In reviewing for clear error, we first consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016). If we determine the instruction was erroneous, it requires reversal only if we are firmly convinced the jury would have reached a different verdict without it. *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). We conduct an unlimited review of the entire record to determine whether an instruction rises to the level of clear error. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

The challenged instruction, Instruction No. 6, states:

"The State must prove that the defendant committed the crime of arson.
- Intentionally
  or
- Knowingly
  or
- Recklessly.

"A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained of by the State.

"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about; or of the circumstances in which he was acting, or that his conduct was reasonably certain to cause the result complained about by the State.

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist; or a result of the defendant's actions will follow.

"This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

This instruction told the jury it could convict Bartell if the State proved he committed arson recklessly. But the State charged Bartell with arson under K.S.A. 2017 Supp. 21-5812(a)(1)(C), which requires a culpable mental state of "knowingly." And a crime with a culpable mental state of "knowingly" requires a higher degree of culpability than one with a culpable mental state of "recklessly." K.S.A. 2017 Supp. 21-5202(b). The State concedes Instruction No. 6 was not legally appropriate because it stated the wrong culpable mental state for arson.

Bartell argues we should apply the constitutional harmless error test because the erroneous instruction violated his constitutional rights to a fair trial and due process. But when a party does not object to a challenged instruction below, that party cannot advance its procedural posture by characterizing the issue as a constitutional claim. See *State v. Williams*, 295 Kan. 506, 517, 286 P.3d 195 (2012). We must still determine whether Instruction No. 6 amounted to clear error.

In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3) [Citation omitted.]." *Betancourt*, 299 Kan. at 135. When determining clear error, this court must review the erroneous instruction's effect in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

19

Looking at the entire record, Instruction No. 6 is not clear error. While Instruction No. 6 erroneously suggested Bartell could be found guilty of arson committed recklessly, Instruction No. 8, listing the elements of arson, stated the correct culpable mental state. That instruction told the jury:

> "The defendant is charged with arson. The defendant pleads not guilty. To establish this charge each of the following claims must be proved:
> "1. The defendant *knowingly*, by means of fire, damaged property in which Steven A.L. Battles had an interest without the consent of Steven A.L. Battles.
> "2. This act occurred on or about the 4th day of July, 2016, in Jackson County, Kansas."
> (Emphasis added.)

During closing, the State also went through the elements as listed in Instruction No. 8, saying it must prove Bartell knowingly lit Battles' truck on fire, even arguing "the real meat of the issue is, did the Defendant knowingly by means of fire damage property." Also, the evidence of Bartell's guilt is overwhelming. Two witnesses saw Bartell walk up to Battles' truck, pour gasoline on it, light it on fire, and then slowly walk away. Officer Barber found Bartell walking away from the truck carrying a gas can and matches. Battles testified that Bartell had confronted him about moving the truck. What is more, Bartell did not deny doing it—he merely argued he was compelled to take action for justifiable reasons. For these reasons, Instruction No. 6 did not amount to clear error.

*Burden of Proof*

Bartell argues the State shifted the burden of proof during closing argument when it made these comments:

> "So the real meat of the issue is, did the Defendant knowingly by means of fire damage property. *You've heard no testimony that suggests that he didn't set a truck on fire on July 4th of last year.* Rather than light fireworks, like he told his grandparents he was going to

20

do, he maliciously and premeditatedly took a gas can to a neighbor's truck and lit it on fire because he didn't agree with the message that the Confederate flag might stand for. . . . I think the evidence, upon review—please take your time to carefully consider all of the evidence that's been admitted. Upon review of that evidence, the State would assert it's met its burden and beyond. *There has been no evidence by the Defense that Mr. Bartell didn't light this fire. There has been no evidence that he isn't the one that did it. There has been no evidence that he was acting in any way other than trying to get retribution on Mr. Battles for having this flag displayed on his pickup truck.* And upon careful review of all the evidence, the State would assert that beyond a reasonable doubt you can find Mr. Bartell guilty of arson." (Emphases added.)

Bartell argues the emphasized language improperly shifted the burden of proof from the State to Bartell by requiring him to produce evidence of his innocence. He contends the error was not harmless because he did not dispute the facts. Instead, he argued the facts did not compel conviction. The State counters that the comments simply pointed out weaknesses in Bartell's defense, so there was no error. The State asserts that even if there were error, it was harmless.

Bartell did not object to the State's comments. But this does not preclude appellate review. We will review a claim of prosecutorial error made during closing even in the absence of a contemporaneous objection. *State v. Roeder*, 300 Kan. 901, 932, 336 P.3d 831 (2014).

When evaluating the propriety of a prosecutor's comments during closing argument, Kansas appellate courts use a two-step process to identify prosecutorial error. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). First, the appellate court must determine "whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. If so, then the court must determine whether the error prejudiced the defendant's

21

due process right to a fair trial using the constitutional harmlessness test identified in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this standard, "[p]rosecutorial error is harmless if the State proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *Sherman*, 305 Kan. 88, Syl. ¶ 8.

A prosecutor may not try to shift the burden of proof to the defendant or misstate the legal standard of the burden of proof. *State v. Williams*, 299 Kan. 911, 939, 329 P.3d 400 (2014). But courts also grant prosecutors considerable latitude in discussing the defense's weaknesses. *State v. Peppers*, 294 Kan. 377, 397, 276 P.3d 148 (2012). When analyzing a prosecutor's comments, courts must evaluate the comments in context. And jury instructions on the burden of proof can also mitigate any error. See *State v. Crosby*, 293 Kan. 121, 136-37, 262 P.3d 285 (2011).

Bartell relies on *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004), *overruled on other grounds by Sherman*, 305 Kan. 88, to support his argument. The *Tosh* court held that the prosecutor improperly attempted to shift the burden of proof by asking the following questions during closing: "'[I]s there any evidence that [the crime] didn't happen? Is there any evidence that the things [the victim] told you didn't happen?'" 278 Kan. at 92. The court held that these comments were error given the prosecutor had also made several other improper comments. 278 Kan. at 92.

On the other hand, the State relies on *Crosby*, in which the court held that the prosecutor did not impermissibly shift the burden of proof on the element of premeditation when he said: "'But ask yourself this: Have you heard any evidence that suggests that [the defendant] did not walk up to [the victim] with some purpose in mind and execute that purpose?'" 293 Kan. at 135. The court noted that the district court had properly instructed the jury on the State's burden of proof, and the prosecutor reinforced

22

these instructions during his rebuttal. The court reasoned that, in context, the prosecutor's comment was "only a general question about the absence of evidence to rebut the State's witnesses" and fell within the wide latitude granted to the State in discussing the defense's weaknesses. 293 Kan. at 137.

Here, the prosecutor stated four times that Bartell had failed to produce any evidence showing he was not guilty. None of the comments were made in rebuttal to Bartell's closing argument, as he had not given it yet. None of the comments appear to be a general question on Bartell's failure to rebut the State's witnesses. Even in context, these comments seem improper. But while the State may have committed error, it need not result in reversal as any error appears harmless.

Bartell must still show the error prejudiced him under the constitutional harmlessness standard to succeed on this claim, but he is unable to do so for several reasons. First, the district court properly instructed the jury that the State had the burden to prove Bartell guilty and that Bartell did not have to prove he was not guilty. Second, while the State may have made several comments shifting the burden of proof, it also mentioned several times that the State had the burden to prove Bartell's guilt beyond a reasonable doubt. Finally, the evidence of Bartell's guilt was overwhelming. See *Sherman*, 305 Kan. at 111 (holding strength of evidence may secondarily affect harmlessness analysis). For these reasons, we find the State's error was harmless.

*Cumulative Error*

Finally, Bartell argues these alleged errors amounted to cumulative error. The cumulative error test is whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, we examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they

23

arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Santos-Vega*, 299 Kan. 11, 27-28, 321 P.3d 1 (2014).

Two errors occurred at trial. First, Instruction No. 6 erroneously instructed the jury on the culpable mental state for arson. Second, the State made comments shifting the burden of proof to Bartell. These errors are somewhat interrelated, as they pertain to the State's burden of proof and what it had to prove at trial. And since diluting the State's burden of proof is an error constitutional in nature, we must apply the constitutional harmlessness test. See *State v. Womelsdorf*, 47 Kan. App. 2d 307, 330, 274 P.3d 307 (2012).

Looking at the entire record, though, any error was harmless beyond a reasonable doubt. The district court properly instructed the jury on the culpable mental state for arson in Instruction No. 8. The State repeated this point in closing. And while the State made comments suggesting Bartell had to provide evidence of his innocence, it also stated it had the burden of proof. Lastly, the evidence of Bartell's guilt was strong. We find cumulative error did not deny Bartell a fair trial.

Affirmed.